[Civ. No. 16207. Fourth Dist., Div. One. Apr. 20, 1978.]

HELEN K. COPLEY et al., as Co-trustees, etc.,
Plaintiffs and Respondents, v.
JANICE COPLEY et al., Defendants and Appellants.

**COUNSEL**

Hervey, Mitchell, Ashworth & Keeney, James E. Hervey, Parker, Millikin, Clark & O'Hara, Frank W. Clark, Jr., Jeffrey L. Glassman and William J. Landers for Defendants and Appellants.

Gray, Cary, Ames & Frye, David E. Monahan, Christopher C. Calkins, Christopher B. Neils, William E. Peterson, Wadsworth, Elderkin, Pirnie & Von Lackum, David M. Elderkin, McInnis, Fitzgerald, Rees & Sharkey, John W. McInnis and William T. Fitzgerald for Plaintiffs and Respondents.

**OPINION**

**STANIFORTH, J.**—Helen K. Copley and Joseph P. Kinney (trustees) sought probate court aid pursuant to Probate Code section 1138.1, subdivisions (a)(2) and (4), "to settle accounts of the trustees and for instructions" pertaining to an *inter vivos* trust established by decedent James S. Copley (grantor) during his lifetime. Janice Copley and Michael Copley (beneficiaries) moved to dismiss the trustees' petition. (Prob. Code, § 1138.5.) The probate court denied their motion. They appeal urging abuse of discretion in the trial court's refusal to accede procedural jurisdiction to another department of the same superior court.

We confront here a procedural crossing, a possible conflict between two departments of the same superior court. Necessary to the resolution of this dilemma is an understanding of the relationship of the "probate court" vis-a-vis the superior court of which it is an integral part. 
For reasons later set out we conclude the superior court, when sitting in probate in performance of functions authorized by Probate Code section 1138 et seq., has limited "jurisdiction" and must, in the circumstances here, accede to the broader plenary jurisdiction to be exercised in the pending declaratory relief action in another department of the same superior court.

We briefly note the the factual background of this appeal. During his lifetime, grantor created the James S. Copley Revocable Trust (revocable trust). This *inter vivos* trust was last amended in its entirety and completely restated May 24, 1973. On October 6, 1973, grantor died. Upon this event, the revocable trust became irrevocable. The sole assets of the revocable trust at grantor's death were all of the outstanding shares

of common stock and part of the preferred shares of stock of Copley Press, Inc. By terms of the revocable trust, upon the grantor's death the trust estate was divided into two trusts: (1) a marital deduction trust for the benefit of Helen K. Copley (marital trust); and (2) a second trust, the nonmarital trust (nonmarital trust) with four named beneficiaries.

### THE PARTIES AND INTERESTED NONPARTIES

Helen K. Copley is the principal beneficiary of the estate of her deceased husband James S. Copley. She is the sole beneficiary of the "marital trust" and is one of the four discretionary beneficiaries of the nonmarital trust.

Janice Copley and Michael Copley are the children of Jean M. Erdman, adopted by James S. Copley during his earlier marriage to Mrs. Erdman. Each is a beneficiary of the nonmarital trust.

The fourth beneficiary of the nonmarital trust, David Copley, is the son of Helen K. Copley, adopted by grantor during his marriage to Helen K. Copley. David does not join Michael and Janice in their appeal.

Helen K. Copley and her brother Joseph P. Kinney are the trustees of the Copley trusts. Copley Press, Inc., a corporation, publishes newspapers in California and Illinois and is not a party to this action. All of its outstanding common stock and some of its preferred stock is held by the trustees of the two trusts. The sale by the trustees of the nonmarital trust to Copley Press, Inc., of a substantial amount of Copley Press, Inc., common stock is the focal point of the dispute here.

### THE PLEADINGS—PROCEDURAL BACKGROUND

That sale of Copley Press, Inc., common stock has given rise to a gaggle of actions, cross-actions, and motions which underlie and have surfaced here in a disarmingly simple appeal from the denial of the beneficiaries' motion to dismiss a trustee's petition filed under Probate Code section 1138.1.

There are three legal proceedings pertaining to the Copley trusts now pending. First in time was the instant proceeding, filed March 12, 1976, by the trustees of the *inter vivos* revocable trust pursuant to Probate Code section 1138 et seq. In these proceedings, the trustees seek approval of

their actions during the period October 6, 1973, through January 31, 1976, and instructions with respect to certain discretionary powers which the trustees contend they were authorized to exercise. Among the actions which the trustees seek to have ratified, confirmed and approved, is the sale of the 672,133 shares of common stock of Copley Press, Inc., held as an asset of the nonmarital trust, to Copley Press, Inc., for a total purchase price of $17.50 per share.

Second, on April 27, 1976, the beneficiaries filed a complaint in the United States District Court (Los Angeles) against the trustees and Copley Press, Inc., charging a fraudulent sale of the nonmarital trust Copley common stock in violation of section 10(b) of the Securities Exchange Act of 1934. The federal complaint seeks damages and declaratory relief. The United States District Court dismissed this action for lack of subject matter jurisdiction. An appeal from the latter order is now pending.

On April 28, 1976, the beneficiaries filed their motion to dismiss the trustees' Probate Code section 1138 petition. On the following day, April 29, 1976, a third lawsuit was instituted. The trustees filed a complaint for declaratory relief in the Superior Court of San Diego County naming the beneficiaries as defendants. This latter complaint prays for a declaration of rights and seeks approval of the same actions of the trustees as is sought in the section 1138 proceeding.

The beneficiaries sought to remove this latter declaratory relief action to the United States District Court (San Diego). However, the trustees' countermotion to remand to the state court was granted. Before the issuance of the order remanding the declaratory relief action by the federal court, the beneficiaries, as defendants in the superior court (declaratory relief) action, filed a counterclaim naming as cross-defendants Copley Press, Inc., Helen K. Copley as an individual and as trustee of the revocable trust and as administratrix of the assets of James S. Copley, and Joseph Kinney in his individual and trustee capacities.

This counterclaim alleges a breach of the trustees' fiduciary duties and a fraud and a conspiracy to commit fraud on the beneficiaries in connection with the purchase and sale of the Copley stock from the nonmarital trust. Of significance, we note, Copley Press, Inc., not a party to the Probate Code section 1138 proceeding, was made a cross-defendant in the declaratory relief cross-action. The counterclaim seeks, by way of relief, the recission of the sale of the 672,133 shares of Copley

Press, Inc., stock, restoration of the stock and dividends to the nonmarital trust, imposition of a constructive trust on the common stock and earnings, and removal of the trustees, etc. Later the beneficiaries amended to file a cross-complaint naming the same parties and alleging the same causes of action but seeking further and additional remedies by way of exemplary damages. In the last of the preappeal hearings, the beneficiaries sought to have the section 1138 Probate Code proceedings dismissed allowing the plenary suit, the declaratory relief action, to proceed. The probate court's denial of the motion precipitated this appeal.

At the heart of the factual quarrel of these parties, both in the Probate Code section 1138 proceedings and in the declaratory relief action, are charges of Janice and Michael, not joined in by beneficiary David, of impropriety by the trustees in dealing with nonmarital trust assets to the detriment of the beneficiaries.

These charged improprieties consist of an allegedly fraudulent sale of common stock from the nonmarital trust to Copley Press, Inc. The nonmarital trust was the owner of 862,500 shares of Copley Press common stock—50 percent of the outstanding common stock. On May 21, 1975, the trustees of the nonmarital trust sold 672,133 shares of the Copley Press common stock to Copley Press, Inc., for $17.50 per share. The total consideration paid to the nonmarital trust consisted of $204,000.91 cash and a subordinated, nonnegotiable promissory note in the amount $11,562,322.59. The beneficiaries urge the consideration received by the nonmarital trust for the sale of the Copley Press stock was grossly inadequate. The beneficiaries further allege a breach of fiduciary duties by the trustees in occupying positions of inherent conflict of interest in the sale-purchase transaction of the Copley stock. They further allege the sale reduced the outstanding shares of Copley common stock with the consequent primary effect of vesting control of Copley Press, Inc., in the *marital* trust. From a 50 percent stock ownership, the marital trust gained by the sale to an 81.9 percent ownership.

The beneficiaries assert a "premium value" develops attendant upon ownership of a controlling block of stock vested in the marital trust and as a further direct concomitant of the sale, the nonmarital trust ownership of Copley stock was decreased to 18.1 percent, a minority possession. This shift in ownership decreased income—dividends—to the nonmarital trust beneficiaries and correspondingly increased the divi-

dend income to Helen K. Copley, the sole beneficiary of the marital trust.

The beneficiaries also allege fraudulent administration of the nonmarital trust in various particulars.

While we have summarized the trust document and the various allegations of the parties, we do not pass upon or evaluate the merits of any of the matters recited and declare no law of the case respecting them.

## PROBATE CODE ARTICLE 2.5

Probate Code article 2.5 (§§ 1138 through 1138.13—effective Sept. 3, 1970), filled a void in probate court jurisdiction over *inter vivos* trusts. (*Wells Fargo Bk. etc. Co.* v. *Superior Court,* 32 Cal.2d 1 [193 P.2d 721].) These sections were the legislative response to an uncomfortable procedural morass in California before 1969 where the superior court would intervene in the administration of an *inter vivos* trust only in the case of an actual controversy—litigation between the beneficiary and the trustee. Hence, unlike the trustees and beneficiaries of testamentary trusts at that time, the trustee of an *inter vivos* trust could not obtain instructions on an accounting from the probate court through the simple process of filing a petition. The trustee of an *inter vivos* trust could not insulate himself from future liability for disclosed transactions by the process of seeking instructions. The beneficiary of an *inter vivos* trust could not obtain an accounting from such trustee unless he filed a civil action against the latter charging fraud and breach of trust. (Kahn, *Probate Court Jurisdiction Over Inter Vivos Trusts* (1971) 5 Bev. Hills Bar J. 26.)

 Thus, article 2.5 was intended to remedy this situation by providing an inexpensive forum through the conferring of jurisdiction over *inter vivos* trusts upon the probate court similar to its jurisdiction of testamentary trusts. The aim was the elimination of the need for time-consuming plenary suits to invoke court assistance and to substitute an economic efficient means to obtain it. (*Selected 1970 California Legislation* (1971) 2 Pacific L.J. 289.)

Section 1138.12 of the Probate Code expressly declares: ". . . the intent of the Legislature in enacting this article [is] that the administration of trusts subject to this article proceed expeditiously and free of judicial intervention subject to the jurisdiction of the courts of this state as

invoked pursuant to this article or otherwise invoked pursuant to law." Article 2.5 applies to revocable as well as irrevocable *inter vivos* trusts. Excluded from the statutory scheme are Totten trusts, business trusts taxed as partnerships or corporations and other specified classes of trusts. (Prob. Code, § 1138, subd. (b).)

*Inter vivos* trusts executed after July 1, 1971, *may* use these procedures. (Prob. Code, § 1138.13.) The verified petition is limited as to subject matter and remedies to the "purposes" specified in Probate Code section 1138.1, subdivisions (a)(1) through (13) for the petition is required to state facts showing it is authorized under this article and the terms of the trust. (Prob. Code, § 1138.4.) The court is authorized to make all orders and decrees "necessary . . . to dispose of the matters presented by the petition." (Prob. Code, § 1138.2.)

The court may dismiss the petition when it appears: ". . . the proceeding is not reasonably necessary for the protection of the interests of a trustee or for the protection of the interests of beneficiaries or remaindermen; . . . ." (Prob. Code, § 1138.5, subd. (a).)

And finally, the remedies provided under this article are cumulative and nonexclusive (Prob. Code, § 1138.1) and appeal is allowed (Prob. Code, § 1138.10).

The Legislature, by article 2.5, has vested limited jurisdiction over specifically delineated procedures "purposes" affecting *inter vivos* trusts in the superior court sitting as a probate court, not in the superior court's general jurisdiction. This conclusion follows from these considerations. First and perhaps of least importance, the statutory scheme is placed in the Probate Code. Of greater importance are the express purposes of the legislation found in Probate Code section 1138.12. The administration of *inter vivos* trusts are to be free from judicial intervention except as jurisdiction is invoked by article 2.5 or "otherwise pursuant to law." The intent derives inferentially from the express limitation on the proceedings—purposes—that may be considered under article 2.5. (Prob. Code, § 1138.1, subds. (a)(1) through (13).)

Furthermore, section 1138.6, subdivision (b) provides: *"Proceedings* under this article *shall be governed, whenever possible,* by the provisions of this article, and when the provisions of this article do not appear applicable, the provisions of Division 3 (commencing with [Probate Code] Section 300) shall apply." (Italics added.)

The fact the proceedings are to be governed wherever possible by division 3 of the Probate Code indicates a statutory intent to designate the probate court to perform the duties assigned in section 1138.1, subdivisions (a)(1) through (13).

Further, the language of section 1138.1 authorizes the "petition[ing] of the *superior* court" (italics added) or of section 1138.3 relating to the venue of an action "commenced in the *superior* court" (italics added) of the county in which the principal place of administration of the trust is located does not negate the intent to assign these procedures to the probate court. Similar assignments of jurisdiction over decedent's property "to the control of the *superior* court" (italics added; Prob. Code, § 300) or "the *superior* court . . . shall retain jurisdiction" (italics added) of a trust created by will but continuing after final distribution of a decedent's estate (Prob. Code, § 1120) is the language used by the Legislature when treating with matters within the jurisdiction of the superior court sitting in probate and not in an exercise of its general jurisdiction.

The commentators are generally in accord: Probate Code section 1138 proceedings are within the "jurisdiction" of the probate court. (See Kahn, *Probate Court Jurisdiction Over Inter Vivos Trusts* (1971) *supra,* 5 Bev. Hills Bar J. 26; 24 Cal.Jur.3d, Decedents' Estates, §§ 110 and 111; Marshall, California Probate Procedure (3d ed. 1973) § 2318, p. 503; but see contra, 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, §§ 8, 10, pp. 5372-5373; 3 Goddard, Cal. Practice (3d ed. 1977) Probate Court Practice, § 1864, p. 100.)

█ In light of the factual background and statutory analysis, we now examine the beneficiaries' contention of abuse of discretion in denying their motion to dismiss the section 1138 Probate Code proceeding. At the core of their argument is this undisputed fact: Copley Press, Inc., was not a party to the Probate Code section 1138 proceeding. Therefore, it is urged in the section 1138 Probate Code proceeding the court (1) cannot hear all of the interrelated claims and (2) cannot grant full relief sought against the trustees of Copley Press, Inc., in the currently pending plenary action. Further, it is asserted the denial of the motion to dismiss results in an unnecessary duplication of litigation with possible inconsistent judgments.

█ From our foregoing analysis of the statutory scheme expressed in article 2.5, we conclude the probate court "jurisdiction" is specific and

limited in subject matter; it is a species of in rem jurisdiction over the trusts and the trustees and beneficiaries. (*Estate of Munson,* 86 Cal.App.2d 67, 72 [194 P.2d 70].) ■ We use the term "limited jurisdiction" in this sense; since the adoption of the California Constitution in 1879 there has been no "probate" court in the sense of a court separate and distinct from the superior court. The term "probate court" is but a convenient way of expressing the concept of a superior court sitting in exercise of its probate jurisdiction. This is but a colloquial expression such as it is used in referring to the domestic relations court, family court, or traffic court. Such expressions as these do not give courts performing these specific functions official status as a separate court. (*Schlyen* v. *Schlyen,* 43 Cal.2d 361, 375 [273 P.2d 897].) "Probate jurisdiction is in the superior court, and the probate court is a department of the superior court exercising such jurisdiction." (*Richer* v. *Superior Court,* 63 Cal.App.3d 748, 756 [134 Cal.Rptr. 52].)

While "generally speaking, matters of procedure have been left to the Legislature," (*Schlyen* v. *Schlyen, supra,* 43 Cal.2d 361, 370) nevertheless the Legislature cannot, in adopting or prescribing procedural measures, "deprive the superior court of its constitutional jurisdiction." (*Ibid.*) With these reservations on the meaning, the use, of the term "probate court jurisdiction," we proceed.

The California Supreme Court in *Estate of Clary,* 203 Cal. 335, 345 [264 P. 242], points up this statutory limitation on probate court jurisdiction and discerned an expansion thereof saying: "It is the trend of recent decisions to extend the jurisdiction of the probate court over such matters as are essentially involved in the probate and settlement of estates, especially where the subject matter has been in said court contested by all parties in interest." (*Ibid.*) And more recently the Legislature has expanded the "jurisdiction" of the probate court to determine controversies of title to property where a third party asserting an interest is claiming adversely to the estate. (Prob. Code, §§ 851.5, 852 and 853; *Richer* v. *Superior Court, supra,* 63 Cal.App.3d 748, 756.)

■ The Supreme Court, by decisional process, has extended jurisdiction of the probate court to allow a determination of the whole matter once before it. In *Estate of Baglione,* 65 Cal.2d 192, 196-197 [53 Cal.Rptr. 139, 417 P.2d 683], the Supreme Court held the probate court: ". . . can determine whether an assignment or other transfer of the interest of an heir legatee, or devisee to a third party is valid and order distribution accordingly. . . . When a party invokes the jurisdiction of a court sitting

in probate by asserting a substantive right in a particular piece of property or in certain assets as an heir, legatee, or devisee, he may also obtain a judgment in that court determining any additional claims that he asserts against those in privity with the estate in the same property. [Citations.] The rationale for this exception is the conservation of time, energy, and money of all concerned. To deny a superior court sitting in probate the power to determine the whole controversy between the parties before it is pointless. In the exercise of its legal and equitable powers [citations], a superior court sitting in probate that has jurisdiction over one aspect of a claim to certain property can determine all aspects of the claim. A claimant is not required to sever and litigate a multifaceted claim in separate proceedings once all the necessary parties are before the court." (*Ibid.*) (See also *Estate of Plum,* 255 Cal.App.2d 357, 362 [63 Cal.Rptr. 241].)

However, the probate court has no general equity jurisdiction although it has the power to apply equitable principles in aid of its function as a probate court. (*Estate of Scarlata,* 193 Cal.App.2d 35 [14 Cal.Rptr. 184].) In *Estate of Cox,* 8 Cal.App.3d 168, 182 [87 Cal.Rptr. 55], the appeal court stated: "In some circumstances the superior court sitting in probate has undertaken to dispose of all aspects of a controversy, some of which were properly brought before it in its limited probate jurisdiction and others of which were incidental to the matters properly brought before it, when all necessary parties also were before the court." (*Ibid.*) But held: "We need not decide whether the principle declared in *Estate of Baglione,* . . . , is applicable in the present situation because here all parties affected were not before the court; and *any application of the Baglione principle requires that all the parties affected be before the court.*" (Italics added; *ibid.*) Thus any extension of the jurisdiction of the probate court has run aground, is thwarted, by the "difficult question of getting jurisdiction over an outside party." (1 Goddard, Cal. Practice (3d ed. 1977) Probate Court Practice, § 25, p. 30.) Absent the voluntary submission of the issue, absent the parties necessary to effectuate a complete determination of the issue before it, "[t]he superior court sitting in probate has only those powers which are granted by statute and such incidental powers, legal and equitable, as enable it to exercise the powers granted." (*Estate of Muhammad,* 16 Cal.App.3d 726, 731 [94 Cal.Rptr. 856]; *Neubrand* v. *Superior Court,* 9 Cal.App.3d 311, 318 [88 Cal.Rptr. 586]; *Estate of Bissinger,* 60 Cal.2d 756, 764 [36 Cal.Rptr. 450, 388 P.2d 682, 19 A.L.R.3d 506]; *Estate of Howard,* 58 Cal.App.3d 250, 260 [129 Cal.Rptr. 836].)

The Legislature has not, in article 2.5, authorized the superior court sitting in a Probate Code section 1138 proceeding to join Copley Press, Inc., and to litigate its respective interests in the controversy or to grant any relief affecting any right of Copley Press, Inc. It is a nonparty to these proceedings. Moreover, the probate court in a Probate Code section 1138 proceeding lacks statutory authority to grant the relief sought from the trustees assuming the complaining beneficiaries prevailed.

Finally, and by no means least, Copley Press, Inc., is an indispensible party whose interest in the subject matter of the controversy is of such nature a final order cannot be rendered between the parties to the suit without inevitably affecting its interests. The failure or inability to join such indispensible party divests a court of jurisdiction to hear the matter. (*Estate of Reed,* 259 Cal.App.2d 14, 22 [66 Cal.Rptr. 193]; *Estate of Hensel,* 144 Cal.App.2d 429, 436-437 [301 P.2d 105].) There is no hint of a legislative directive to the probate court in section 1138 proceedings to try a fraud action seeking damages, recission and other equitable relief. These proceedings clearly do not come within the principles set forth in *Baglione* or any disclosed extension of probate court processes.

Conversely, the superior court in the currently pending declaratory relief action has plenary jurisdiction of all the parties, the issues, and has available to it all appropriate legal or equitable remedies to resolve the dispute. (*Bay Shore Homes, Inc.* v. *San Diego Trust & Sav. Bk.,* 276 Cal.App.2d 108, 112-113 [80 Cal.Rptr. 849].)

Under these circumstances we conclude the probate court abused its discretion in not staying or consolidating its Probate Code section 1138 proceedings with the pending plenary suit. It lacks the essential parties, processes, and remedies to resolve a controversy presented. The statutory purposes of section 1138.1 do not encompass, treat, those issues tendered in the declaratory relief action and cross action pending. The retention of the matter would result in a piecemeal disposition of the controversy with possibly duplicating, possibly inconsistent orders. We conclude these Probate Code section 1138 proceedings are not reasonably necessary for the protection of either the trustees or the beneficiaries; rather, they offer to view a procedural Pandora's box.

Judgment reversed with directions to consolidate the Probate Code section 1138 proceeding with the pending declaratory relief action and cross-actions. The latter plenary action shall be first tried; any issues

thereafter remaining within the Probate Code section 1138 proceeding shall be determined by the judge in the exercise of his probate jurisdiction.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied May 8, 1978, and respondents' petition for a hearing by the Supreme Court was denied June 15, 1978.