[No. A025119. Sixth Dist. Mar. 1, 1985.]

Estate of PAUL R. PARRETTE, Deceased.
ANNE-LISE PARRETTE et al., Petitioners and Respondents, v.
S. R. HUTCHISON, as Trustee, etc., Objector and Appellant.

Counsel

S. R. Hutchison, in pro. per., for Objector and Appellant.

Tommy F. Angell, Barry D. Hovis and Angell, Holmes & Lea for Petitioners and Respondents.

Opinion

AGLIANO, J.—The widow and daughter of Paul R. Parrette, as beneficiaries, petitioned the Monterey County Superior Court for orders (1) requiring S. R. Hutchison, trustee of decedent's testamentary trust and of his *inter vivos* trust, to file accounts of his administration of each trust and to distribute assets, (2) determining reasonable fees for the trustee, and (3) removing Hutchison as trustee, and appointing a successor trustee. Hutchison objected, claiming that he was not subject to the jurisdiction of the court by virtue of the following provision in each trust: "No bond shall be required of the original trustee or of any successor trustee hereunder; and neither original trustee nor any successor trustee shall be subject to the jurisdiction of the court administering the estate of Paul R. Parrette; nevertheless each trustee shall render a written accounting of said trust estate to each beneficiary thereof not less frequently than annually."[1]

The trial court determined it had jurisdiction and granted the orders prayed for. The trustee appeals, contending: (1) the court's determination of jurisdiction was in error, and (2) the court failed to hold a hearing on the merits of the beneficiaries' petition. We agree with the court's decision and affirm its orders.

*Facts*

*The Testamentary Trust*

Paul Parrette died on October 17, 1980, while a resident of Monterey County, California. His will and codicil were admitted to probate in Monterey County and S. R. Hutchison, per the will, was appointed executor. An inventory and appraisement filed on January 13, 1982, disclosed estate assets of a value of $890,996.04. On February 19, 1982, the court ordered final distribution of the estate in part to decedent's wife, Anne-Lise, his

---

[1]The provisions in the testamentary trust and the *inter vivos* trust are substantially identical. The clause in the *inter vivos* trust reads in part, "the Court administering my estate," rather than "the court administering the estate of Paul R. Parrette" as in the testamentary trust.

daughter, Constance Keenan, and the residue in the approximate amount of $690,000, to S. R. Hutchison, as trustee of decedent's testamentary trust. Hutchison was and still is an attorney at law with offices in Phoenix, Arizona. Decedent's will, dated October 28, 1977, and the codicil, dated November 15, 1979, had been executed while he resided in Arizona. He moved to Monterey County, California, in January 1980.

*The Inter Vivos Trust*

Mr. Parrette, while a resident of Arizona, had created a revocable *inter vivos* trust on November 28, 1966, naming Valley National Bank of Arizona as trustee, and his wife and daughter as beneficiaries upon his death. Then followed several amendments. On July 3, 1975, Mr. Parrette named himself trustee and life income beneficiary, and Valley National Bank of Arizona successor trustee. On February 24, 1976, he named S. R. Hutchison first successor trustee and Valley National Bank of Arizona second successor trustee, and also added the above described provision purporting to eliminate jurisdiction of the court over the trustee.

On November 15, 1979, the *inter vivos* trust was amended to name Wells Fargo Bank of Carmel Valley, California as second successor trustee in place of Valley National Bank of Arizona.

On July 15, 1980, the *inter vivos* trust was amended for the last time showing that Mr. Parrette was then a resident of Monterey County, California.

The assets of the *inter vivos* trust, as disclosed in the first account and report of Hutchison as executor of decedent's will, on April 15, 1981, amounted to $2.5 million.

*The Beneficiaries Petition the Court for Relief*

Hutchison obtained an order of final discharge as executor of decedent's estate on September 28, 1982, after filing a receipt of assets as trustee of the testamentary trust. He simultaneously filed a "Third Account" of administration of the testamentary trust, and the *inter vivos* trust and request for settlement and approval. The record does not reflect further action on this account.

Approximately six months after final discharge, on April 8, 1983, Hutchison, as the "personal representative of the estate" of decedent, filed a petition for amendment of the order fixing inheritance tax requesting a reduction in tax on the ground the expenses of administration had understated the commissions paid to the personal representative as $18,969.92 rather than $109,285. The court set May 6, 1983, for hearing.

On May 4, 1983, decedent's wife and daughter filed objections and petitioned the court, under Probate Code section 1138.1 et seq., for an order that Hutchison file an accounting as to each trust, that his fees be set at a reasonable sum, that he be ordered to distribute assets, and that he be surcharged and removed as trustee. This petition alleged that Hutchison had failed to distribute assets of the testamentary trust, had failed to distribute income from the *inter vivos* trust and had paid himself excessive commissions, in excess of $3,000 per month, from each trust.

On May 12, 1983, Hutchison filed a withdrawal of his own petition to amend the order fixing tax, and simultaneously filed a special appearance for the sole purpose of raising the court's lack of jurisdiction over him as trustee in relation to the beneficiaries' petition. He claimed that under the trusts and the statutory law of California, jurisdiction to hear the petition was withheld and further, that petitioners failed to allege facts disclosing the court's jurisdiction. The trustee relied on Probate Code sections 1120, 1120.1a, and 1138.1, subdivision (b).

Hutchison did not appear at the hearing held on June 22, 1983. The petition of the beneficiaries was submitted on their verified petition and points and authorities, whereupon the court made its order for an accounting and distribution of assets, and for replacement of Hutchison by Wells Fargo Bank as successor trustee of both trusts.

*Trustor's Intent Governs*

Mr. Hutchison contends that it was the intention of Mr. Parrette to insulate him, as trustee of each trust, from judicial intervention in all matters relating to administration and management of the trusts.

It is the duty of the court to determine the intent of the settlor or maker of a trust and, when determined, to give such intent effect. (*Brock* v. *Hall* (1949) 33 Cal.2d 885, 889 [206 P.2d 360, 11 A.L.R.2d 672].) The intent is to be gathered from the expressions in the trust agreement. "The centerpiece of interpretation, of course is the language contained in the will or in the trust document. One of the axioms is that words are to be taken in their ordinary and grammatical sense, unless a clear intention to the contrary can be ascertained." (*Wells Fargo Bank* v. *Huse* (1976) 57 Cal.App.3d 927, 932 [129 Cal.Rptr. 522].)

*The Court May Not Be Ousted of Jurisdiction*

The trustee accedes to no middle ground. He appears to seek immunity—not merely from the special proceedings provided by the Probate Code for the supervision of trust administration (Prob. Code, §§ 1120-1139.19), but from any civil action at law or equity which might be brought

to redress fraud, incompetency or violations of a trustee's duties generally. (See Civ. Code, §§ 2215-2289.) Such a construction of the provision in question is not only, as we shall see, contrary to its plain terms, but against public policy. ▇ A term in an agreement ousting the court of jurisdiction is void. (*Mannix* v. *Superior Court* (1933) 133 Cal.App. 740, 743 [24 P.2d 507]; 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 2, p. 527, § 245, p. 786.)

*The Clause in Question Limits Jurisdiction Only With Respect to Continuing Supervision and Control of the Trust by the Court Which Administers the Deceased Trustor's Estate. The Instant Petition of the Beneficiaries Did Not Invoke Such Jurisdiction*

▇ Insight into the intent of Mr. Parrette is provided by examining the statutory history of judicial trust supervision. First, it should be noted that although this case involves trust instruments drafted in Arizona, the laws of California and Arizona, insofar as relevant to the trustor's intent, are substantially similar. Under former, relevant laws of Arizona[2] and California,[3] the trustees of testamentary trusts remained subject to the continuing jurisdiction of the court administering the decedent's estate. (Bogert, Trusts and Trustees (2d ed. rev.) § 563, p. 270.) In Arizona the court retained jurisdiction to settle the trustee's periodic and final accounts, and in California the court retained broad jurisdiction for the purpose, inter alia, of determining to whom the property passed on distribution of the trust, settling the trustee's accounts, passing upon his acts and instructing the trustee on matters pertaining to administration of the estate. (See *Estate of Gump* (1982) 128 Cal.App.3d 111, 116 [180 Cal.Rptr. 219].)

We surmise with the aid of acknowledgements in the trustee's briefs that such continuing jurisdiction over the trust following final distribution was deemed burdensome, expensive and unnecessary. Trust administration, absent dispute among the parties, could well proceed efficiently and expeditiously without mandatory judicial control.

Such practical considerations explain trust provisions which purport to eliminate the court's continuing supervision and control. (See Bowe, *Sym-*

---

[2]Former Arizona statute section 14-1021, as amended, Laws 1959, chapter 80, section 1, provided: "A. When a trust to continue after distribution has been created by will, the court shall not lose jurisdiction of the estate by final distribution, but shall retain jurisdiction thereof for the purpose of settling accounts under the trust."

[3]California Probate Code section 1120, as enacted in 1931, provided: "When a trust created by a will continues after distribution, the superior court shall not lose jurisdiction of the estate by final distribution, but shall retain jurisdiction for the purpose of determining to whom the property shall pass . . . of settling the accounts and passing upon the acts of the trustee and for the other purposes hereinafter set forth." (Stats. 1931, ch. 281, § 1120, p. 659.)

*posium on Trust Planning* (1959) 1 Ariz. L.Rev. 175.)[4] Appellant Hutchison, in a supplemental brief filed at the court's request, acknowledges that such a provision was in fact contained in the testamentary trust sections of a prior will of Mr. Parrette dated December 13, 1966. The provision read that following distribution of the estate, "neither the residue of my estate, nor the trust estate, nor the Trustee thereof, shall be subject to the jurisdiction of the Court in which my estate is administered."

Arizona and California eventually repealed provisions which mandated continuing supervision of testamentary trusts, replacing them with less restrictive procedures permitting judicial intervention only as invoked for the purpose of resolving disputes.[5] In 1976, California Probate Code section 1120[6] as amended gave testators the option to substitute continuing jurisdiction with a voluntary proceeding under Probate Code section 1138.1.[7]

[4] A suggested trust provision offered in the symposium by Professor William J. Bowe read as follows: "It is my intention and desire that the trusts herein provided for shall be administered free from the jurisdiction and control of the court having jurisdiction of the settlement of my estate, and that said court shall not continue the administration of my estate . . . ." (1 Ariz. L.Rev., *supra,* at p. 223.)

[5] Arizona Revised Statutes Annotated (1973) section 14-7201 provides in relevant part: "A. The court has exclusive jurisdiction of proceedings initiated by interested parties concerning the internal affairs of trusts. . . . [¶] B. A proceeding under this section does not result in continuing supervision by the court over the administration of the trust. The management and distribution of a trust estate, submission of accounts and reports to beneficiaries, payment of trustee's fees and other obligations of a trust, acceptance and change of trusteeship and other aspects of the administration of a trust shall proceed expeditiously consistent with the terms of the trust, free of judicial intervention and without order, approval or other action of any court, subject to the jurisdiction of the court as invoked by interested parties or as otherwise exercised as provided by law."

[6] As amended in 1976, Probate Code section 1120, subdivision (c), provided: "Unless the testator provides otherwise in the will, a trust created by a will executed on or after July 1, 1977, shall not be subject to the continuing jurisdiction of the superior court, however Article 2 (commencing with Section 1138) of this chapter shall be applicable to the trust to the extent that the will or the article does not provide otherwise."

[7] Probate Code section 1138.1 provides: "(a) A trustee, beneficiary, or remainderman may petition the superior court for any of the following purposes: [¶] (1) Determining to whom the property shall pass or be delivered upon final or partial termination of the trust, to the extent such determination is not concluded by the trust instrument. [¶] (2) Settling the accounts and passing upon the acts of the trustee. [¶] (3) Authorizing the trustee to accept additions to the trust when the trust instrument does not prohibit such additions. [¶] (4) Instructing the trustee. [¶] (5) Compelling the trustee to submit his accounts and report his acts as trustee to a beneficiary or remainderman when it appears that the trustee has failed to submit an accounting and report within 60 days after written request of a beneficiary or remainderman and no accounting and report has been made within six months preceding such request. [¶] (6) Granting to the trustee powers not expressly contained in the trust instrument to the extent provided in Section 1120.2. [¶] (7) Fixing, directing, or allowing payment of compensation to the trustee in accordance with Section 2274 of the Civil Code. [¶] (8) Appointing a trustee. [¶] (9) Accepting the resignation of a trustee. [¶] (10) Removing a trustee. [¶] (11) Authorizing or directing removal of the trusts or assets of the trust to another jurisdiction pursuant to the procedure provided in Article 3 (commencing with Section 1139) Chapter 19, Division 3. [¶] (12) Directing the relief provided in Section 2279.1 of the Civil Code. [¶] (13) Amending or conforming the trust instrument in the manner required to qualify the decedent's estate for the charitable estate tax deduction permitted by federal law, including the addition of mandatory governing instrument requirements for a

Section 1138.1 was already in place, having been enacted in 1970 to facilitate the administration of *inter vivos* and other trusts.

However, as the trustee points out, even the authority to proceed under section 1138.1 can be withheld by express provision or necessary implication in the trust. (Prob. Code, §§ 1138, subd. (b), and 1138.13.) Until 1970, the probate court did not have jurisdiction over *inter vivos* trusts (*Auslen* v. *Superior Court* (1962) 58 Cal.2d 820 [27 Cal.Rptr. 8, 377 P.2d 72]), and litigation relating to a trust and its administration required an independent proceeding, often lengthy and expensive. If any trust were to eliminate the authority of a party to petition the court for relief under section 1138.1, such party would be relegated for redress to a time-consuming and burdensome civil action at law or in equity. (See *Copley* v. *Copley* (1978) 80 Cal.App.3d 97, 104 [145 Cal.Rptr. 437]; *Wells Fargo Bk. etc. Co.* v. *Superior Court* (1948) 32 Cal.2d 1, 12 [193 P.2d 721]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 8, p. 5372.)

Considering the statutory history outlined above, the plain language of the clause in question and the surrounding circumstances, we uphold the trial court's implied finding that the intent and purpose of the clause in each trust was to insulate the trustee only from the ongoing supervision and control of the court in which the decedent's estate was administered. We reach this conclusion readily with regard to the testamentary trust, for continuing supervision might otherwise automatically follow final distribution of the estate, and the purpose to eliminate its attendant burden is easily understood. We also do not find inconsistent the presence of the clause in the trust even when statutory amendments would have accomplished the same result for the testator.

Presence of the clause in the *inter vivos* trust, however, is not as easily explainable, for an *inter vivos* trust would not ordinarily fall within the continuing supervision of the court. ■ "When a person creates, and transfers property to, an inter vivos trust and the trust estate does not revert to the settlor's estate on his death, the trust property is not subject to probate administration in the settlor's estate. *Estate of Heigho* (1960) 186 CA2d 360, 9 CR 196. The property is not subject to probate administration even if the decedent-settlor was a life beneficiary of the trust or retained the unexercised power to revoke . . . ." (1 Cal. Decedent Estate Administration (Cont.Ed.Bar 1971) § 4.57, p. 162.) ■ Use of the clause in an

charitable remainder trust as required by final regulations and rulings of the United States Internal Revenue Service, in any case in which all parties interested in the trust have submitted written agreement to the proposed changes or written disclaimer of trust. [¶] (b) The terms of a trust subject to this article may expressly or by necessary implication limit or eliminate the authority of any trustee, beneficiary, remainderman or other person to petition the court under this article for any one or more of the purposes enumerated in subdivision (a)."

*inter vivos* trust in this setting seems redundant. We can reasonably conclude, however, without doing violence to the settlor's intent, that the clause was inserted in the trust in an excess of caution, and for example, to avoid the effect of any question whether certain assets were held by the testamentary trust or by the *inter vivos* trust. Such question was indeed presented in the case of *Wells Fargo Bk. etc. Co.* v. *Superior Court, supra,* 32 Cal.2d 1,[8] where the ultimate issue also involved continuing jurisdiction under Probate Code section 1120.

However, the pivotal factor in this case is the language of the clause itself which overcomes any interpretation depriving the court below of jurisdiction to consider the petition. The clause in plain terms excludes the jurisdiction of "the Court administering [the decedent's] estate." When the beneficiaries' petition was filed, *there was no court administering Mr. Parrette's estate.* That proceeding had terminated without continuing jurisdiction. The clause had served its function. Are we to say now that this language goes further and either expressly or by necessary implication eliminates the authority of the beneficiaries to petition the court for relief under section 1138.1? The clause, in our view, does not necessarily disclose that intent and to impart such meaning to it might very well subvert Mr. Parrette's intent. Considering that the alternative would lead to expensive and time-consuming litigation, any doubt as to his intent should be resolved in favor of the jurisdiction which the court below has assumed. We consider also, that the provisions of each trust require the trustee to render accounts to the beneficiaries at least annually. It is doubtful that Mr. Parrette would have intended to leave enforcement of that provision to the lengthy process of a civil action rather than to the more efficient and expeditious procedure under section 1138.1.

*The Trial Court Held a Hearing on the Merits of the Beneficiaries' Petition*

We turn to Hutchison's second contention—that the trial court did not hold a hearing on the merits of the beneficiaries' petition but rather decided the issues on oral argument alone. We disagree.

The court had before it the verified petition of the beneficiaries filed on May 4, 1983, which alleged the creation and existence of the two trusts; that demand had been made on the trustee for distribution of assets and income under the terms of the testamentary trust, and that the trustee had failed to comply; that the trustee had treated the two trusts as one; that the value of the trusts had been depleted; and that the trustee was improperly paying himself commissions of in excess of $3,000 per month from each trust.

---

[8]The court stated: "The question arises therefore whether the petitioner as trustee of the 'Robbins Foundation' held the interest distributed to it for the benefit of the foundation as a trustee of a trust created by will or as a trustee of an *inter-vivos* trust." (*Id.,* at p. 5.)

Hutchison did not contest these allegations but instead filed a "special appearance" objecting to the court's jurisdiction to hear the petition.

Section 1233 of the Probate Code authorizes the use of affidavits or verified petitions as evidence "in any uncontested probate proceedings." A proceeding under section 1138.1 is in probate. (*Copley* v. *Copley, supra,* 80 Cal.App.3d 97, 105.) The verified petition of the beneficiaries in this case contained sufficient facts to justify the court's orders. The merits were uncontested. The court in its order expressly stated it had "considered the verified petition, the pleadings and files related to this matter" and then found significant parts of the petition to be true. We therefore conclude that a hearing on the merits was held, the court properly considering the verified petition as evidence. (*Estate of Mesner* (1951) 37 Cal.2d 563, 567 [233 P.2d 551]; see also *Estate of Fraysher* (1956) 47 Cal.2d 131, 135 [301 P.2d 848].)

The order of the trial court is affirmed.

Panelli, P. J., and Brauer, J., concurred.

A petition for a rehearing was denied March 19, 1985, and appellant's petition for a hearing by the Supreme Court was denied April 24, 1985.