Filed: 7/13/2016

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| EDWARD BENNETT GREGGE, | H040663 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 1-12-PR-170606) |
| v. | |
| MICHAEL HUGILL, as Trustee, etc., | |
| Defendant and Respondent. | |

Edward Bennett Gregge (Bennett) challenges the dismissal of his Probate Code section 17200 petition to determine the validity of a 2008 amendment to his grandfather's inter vivos trust. The petition alleged that Bennett's grandfather lacked testamentary capacity and was subject to undue influence when he executed the amendment. We conclude that the trial court abused its discretion when it dismissed Bennett's petition under Probate Code section 17202 based on a non-party disclaiming his interest in the trust estate. The court's acceptance of the disclaimer was contrary to public policies of effectuating a testator's intent and dissuading elder abuse, and was premised on the erroneous view that the disclaimer effectuated a settlement of the lawsuit. A settlement assumes the consent of the parties; it is not a side deal between the court and a non-litigant. Bennett had an interest in challenging the validity of the 2008 amendment, and the prosecution of his petition was necessary to protect that interest. Accordingly, we will reverse the judgment.

## I. BACKGROUND

William B. Hugill died in 2011. His wife, Janice, had passed away in 1996.[1] In 1990, the couple created an inter vivos trust appointing William as trustee. That instrument provided for the establishment of two separate trusts as soon as one spouse died—the decedent's irrevocable trust, and the survivor's amendable and revocable trust. The trust further provided that, upon the death of the surviving spouse, both trusts would terminate. After disbursement of certain personal property, 30 percent of the remainder of the survivor's trust would be distributed in equal shares to William's four children, Michael, Patrick, Marjorie, and Holly. The other 70 percent would be set aside in a grandchildren's trust for college educations, with the remainder of that subtrust to be divided among William's children (30 percent) and grandchildren (70 percent) after the youngest grandchild turned 26. The document contained a no contest provision.

In 1997, William amended the survivor's trust, designating a fixed $900,000 to fund the grandchildren's trust, to be distributed as stated in the 1990 trust instrument. He allocated the estate residue among his four children, with 30 percent to be disbursed to Patrick, 30 percent to be disbursed to Marjorie, five percent to be disbursed to Michael, and 35 percent to be disbursed to Holly.

In 2000, William amended the survivor's trust by eliminating Michael's five percent residual share and increasing Patrick's share to 35 percent. In 2001, William removed Michael's children Kathleen and Cameron as beneficiaries of the grandchildren's trust, but he restored their status one year later. In 2005 William again removed Cameron as a grandchildren's trust beneficiary. He also divided the $900,000 grandchildren's trust into equal shares for his six other grandchildren, to be distributed—half to the grandchild and half to the grandchild's parent who is William's child—when

---

[1] Because this case involves several family members, many sharing the same surname, we will use first names to avoid confusion, intending no familiarity or disrespect.

each grandchild turned 26. As a result, under the 2005 amendment each named grandchild would receive $75,000 (one half of $150,000). The trustee was vested with discretion to disburse sums from each grandchild's share to pay for that grandchild's higher education before age 26.

William designated Marjorie as first successor trustee in 1997, with Michael, Holly, and Patrick (in that order) designated as successor trustees in the event Marjorie was unable to serve. William never changed Marjorie's designation as first successor trustee, but he removed Michael from the list of successor trustees in 2001.

William executed a final amendment to the survivor's trust on June 5, 2008, two weeks after he underwent surgery to remove a subdural hematoma. The 2008 amendment restored Michael as a trust beneficiary on equal footing with his siblings, and it restored Cameron as a grandchildren's trust beneficiary on equal footing with his sister and cousins. Under the amendment, Michael was designated to succeed William as trustee, with Marjorie, Holly, and Patrick (in that order) designated as successor trustees. By adding Cameron as a grandchildren's trust beneficiary, the 2008 amendment reduced each grandchild's fixed disbursement under the 2005 amendment from $75,000 to $64,286, a difference of $10,714.

In late 2009, William resigned as trustee and Michael became successor trustee. According to Michael's first account and report filed May 1, 2012, when William died in 2011 the survivor's trust held assets exceeding $4.2 million.

## II. TRIAL COURT PROCEEDING

Following Michael's first accounting, Holly's son Bennett filed a petition under Probate Code section 17200[2] to determine the validity of the June 5, 2008 amendment to the survivor's trust. Bennett alleged that William lacked testamentary capacity and was unduly influenced by Michael in executing the 2008 amendment, and that Michael

_____

[2] Unspecified statutory references are to the Probate Code. Unspecified subdivisions are to section 17200.

3

unduly benefited from the disposition of the trust estate and from his appointment as successor trustee. The petition alleged further that Michael had deprived William of proper medical care after William fell in 2009, and in 2010 when William contracted pneumonia. The petition sought a determination that the 2008 amendment was void due to lack of testamentary capacity and undue influence.

In preparation for trial, Michael moved in limine to exclude all evidence supporting a challenge to the residue of the survivor's trust estate. Michael argued that Bennett, as a grandchild, was not a beneficiary to the trust residue, and thus had no standing to challenge the residue. Bennett argued that as a beneficiary of the trust, he was entitled to challenge the validity of the 2008 amendment in its entirety under section 17200.

At argument held on the first day of trial, Michael identified Bennett's interest in the 2008 amendment as $10,700. He argued that Bennett's interest was not an interest in the residuary estate so it did not provide him with standing to challenge the residue, and that if $10,000 "is what would be holding up the Court in terms of a full dismissal," he was certain the residuary beneficiaries who had formally objected to Bennett's petition[3] would pay the difference to Bennett to end the litigation, subject to the right to recover their attorney's fees. Citing section 17202, which authorizes a court to dismiss a section 17200 petition "if it appears that the proceeding is not reasonably necessary for the protection of the interests of the trustee or beneficiary," Michael argued that Bennett should not be allowed to burden the residue with litigation.

The court expressed its view that Bennett could contest the 2008 amendment because that instrument reduced his interest in the grandchildren's subtrust. The court was uncertain whether, if Bennett were to prevail, the remedy would be to invalidate only

---

[3] Patrick and Marjorie filed an objection to the petition, denying that William lacked testamentary capacity or was unduly influenced when he executed the 2008 amendment.

the grandchildren's subtrust in which Bennett held an interest (resulting in Cameron losing his one-seventh interest in that subtrust) or the entire instrument. At that point Michael told the court that "Cameron will waive his one-seventh interest in the grandchildren's trust" to dispose of the case in its entirety. Bennett rejoined that Michael should not be able to manipulate standing at the time of trial, and that the challenge to the 2008 amendment affected not only Bennett's own pecuniary interest in the grandchildren's trust, but the validity of the entire instrument.

Emphasizing that the law disfavors will contests, the trial court stated its intention to dismiss the petition under section 17202 if Cameron would agree to relinquish his interest in the grandchildren's trust, because that relinquishment would eliminate Bennett's standing by restoring his interest to what it was before the 2008 amendment. The court explained: "[I]f Cameron gave up his share because he wants to save his family not just the expense but so everybody can get along because that's the most important thing in a family – and I think that's why will contests are disfavored, correct, in probate? [¶]…[¶] Then there is no harm to vet it and everybody can live in harmony [¶]…[¶] So isn't that what the policy of the law is, if will contests are disfavored?"

Bennett disagreed, arguing "When there's undue influence and when there's lack of testamentary capacity, when there is elder abuse, will contests, trust contests and elder abuse complaints are very much favored by the courts and the [L]egislature." The court countered: "Except that none of the other beneficiaries believe that that is what happened, if they didn't themselves raise the issue in a petition." To which Bennett responded: "And you don't need more than one beneficiary to raise an issue. If you have four beneficiaries … [y]ou don't need two, three or four of four. You don't need a majority to do a trust or will contest. You need one beneficiary. Bennett is the one beneficiary … and he is attacking the instrument that impacted his beneficial interest

5

because he believes it was procured against a 90-plus-year-old man in violation of applicable law."

The court further described its reasoning: "I just think that the courts should want to do what's in everybody's best interest. And we're an equitable court. And so I think if the family wanted to get this over and done with and defeat standing, that's their prerogative. [¶]…[¶] And if a family can live in harmony and a person doesn't lose whatever they thought they were going to lose and nobody else in the family objects to the issue, then that should be the end of it. That should be what happens." The court continued, "You know where I stand in terms of standing"—that "[i]f Cameron's going [to] come in here and say that he's given up his interest so that Bennett's not affected in any negative way, then I would find that there's no standing because his pecuniary interest is not affected." The court nonetheless invited briefing on the issue and on whether, if Cameron would not disclaim, Bennett's challenge would extend to the entire trust, or only to the grandchildren's trust.

Cameron signed a declaration disclaiming his interest in the grandchildren's trust conditioned on the entry of a final order dismissing the petition, and Michael filed that declaration with a memorandum arguing that the petition should be dismissed in its entirety under section 17202 because Cameron's disclaimer eliminated Bennett's standing to challenge the 2008 amendment. Bennett's memorandum argued that his beneficiary status conferred standing to challenge the 2008 amendment in its entirety, and that section 17202 should not be used to defeat his challenge in light of public policy against undue influence and elder abuse.

When the court reconvened, Bennett pressed that public policy favored a trial on the merits of his undue influence and lack of capacity claims. But the court viewed Cameron's disclaimer as a settlement of the estate resulting in the elimination of Bennett's pecuniary interest in a challenge to the 2008 amendment: "Cameron wants peace in his family. He is even offering to give up his portion so that Bennett's portion

6

of his interest is not in any way impaired. There's a settlement of this matter in that instance." The court found "that Cameron has agreed to give up his portion of whatever he might inherit, so that Bennett's interest in the grandchildren's trust is not negatively affected; therefore 17202 applies[.]" The judgment reflected a dismissal under section 17202.

### III. DISCUSSION

**A. STANDARD OF REVIEW**

Section 17202 provides that "[t]he court may dismiss a petition if it appears that the proceeding is not reasonably necessary for the protection of the interests of the trustee or beneficiary." No court has addressed the proper standard of review of a dismissal under section 17202, although one court has applied the abuse of discretion standard to a dismissal under section 17202's predecessor statute, former section 1138.5. (*Copley v. Copley* (1978) 80 Cal.App.3d 97, 106.) Being permissive and not mandatory, a dismissal under section 17202 invokes the discretion of the trial court. (Cf. *Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 427 ["[T]he probate court has wide, express powers to 'make any orders and take any other action necessary or proper to dispose of the matters presented' by the section 17200 petition. (§ 17206.)"].) Accordingly, we will apply the abuse of discretion standard to the trial court's assessment of the interests of the trustee or beneficiary under section 17202. However the interpretation and application of that statute is a matter for our independent review. (*International Alliance of Theatrical Stage Employees, etc. v. Laughon* (2004) 118 Cal.App.4th 1380, 1387.)

"The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown." (*Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355.) "The scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action ... .' Action that transgresses the

confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion." (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.)

## B.    STANDING

Bennett argues that he has standing to contest the 2008 amendment both as a vested beneficiary of the grandchildren's trust and as a contingent beneficiary and successor-in-interest to his mother Holly's portion of the trust residue.  He argues that as a beneficiary section 17200, subdivision (a) (providing that a trust beneficiary may petition the court "concerning the internal affairs of the trust"), subdivision (b)(1) (proceedings to address construction of the trust instrument), subdivision (b)(3) (proceedings to determine the validity of a trust provision), subdivision (b)(10) (proceedings to appoint or remove a trustee), and subdivision (b)(12) (proceedings to redress a breach of trust) give him a statutory right to test the validity of the 2008 amendment.

Subdivision (a) provides that "a trustee or beneficiary of a trust may petition the court under this chapter concerning the internal affairs of the trust or to determine the existence of the trust."  Subdivision (b) identifies several types of proceedings "concerning the internal affairs of the trust."  On its face, section 17200 allows Bennett, as a vested beneficiary of the grandchildren's trust,[4] to file a petition challenging the validity of the 2008 amendment.  (§ 24, subd. (c); see *In re Estate of Bowles* (2008) 169 Cal.App.4th 684, 699.)   In our view, the petition falls under subdivision (a) concerning the existence of the trust, and under subdivisions (b)(1), (b)(3), and (b)(13) (approving or directing the modification or termination of the trust).

---

[4] We reject Bennett's argument that he is a contingent beneficiary to Holly's interest in the trust residue.  Holly's interest in the trust passed to her in its entirety upon William's death and is now vested.  Whatever interest Bennett may or may not have in Holly's property at the time of her death is not yet known and not governed by the trust.

Bennett's petition, however, is subject to dismissal under section 17202, "if it appears that the proceeding is not reasonably necessary for the protection of the interests of the trustee or beneficiary." (§ 17202.) Bennett had a pecuniary interest in the grandchildren's trust that would have been protected by a successful undue influence or lack of capacity challenge to the 2008 amendment (cf. *Lickter v. Lickter* (2010) 189 Cal.App.4th 712, 728 (*Lickter*) [beneficiary challenging testamentary instrument must have an interest "that may be impaired, defeated, or benefited by the proceeding at issue."]; *Jay v. Superior Court* (1970) 10 Cal.App.3d 754, 758 [a beneficiary under a will may contest a later will or codicil "if his pecuniary interest in the devolution of the property would [] be affected or impaired by the later will or codicil."]) until Cameron's disclaimer eliminated any potential financial impact on Bennett's share of the subtrust. Thus, to determine whether the trial court's dismissal was appropriate, we turn to whether Cameron's disclaimer was properly accepted by the trial court.

## C.    THE DISCLAIMER AND DISMISSAL

Bennett argues that the trial court's dismissal of his petition was contrary to public policy. According to Bennett, the trial court's deprivation of his standing has shielded Michael from any accountability and essentially sanctioned an estate plan executed by unlawful means. Bennett argues that public policy favors testamentary contests involving credible allegations of undue influence and lack of capacity, compelling courts to adjudicate, not dismiss, those contests. In support of his position that this policy holds true even when a majority of the beneficiaries do not support the contest, Bennett cites *Estate of Lowrie* (2004) 118 Cal.App.4th 220 (*Lowrie*). The *Lowrie* court noted that standing under the Elder Abuse Act (Welf. & Inst. Code, § 15600 et seq.) must be analyzed in a manner that induces protection of the victimized, and must be interpreted to deter, not encourage, such abuse, so that abusers who gain control of an estate cannot use a restrictive interpretation of standing to avoid accountability. (*Lowrie*, at pp. 230–231.) Michael counters Bennett's public policy argument by noting that Bennett had not filed

an elder abuse claim, and he lacks standing to do so.  Michael refers us to the *Lickter* court's conclusion that a court does not have discretion "to find standing in order to further the public policy in favor of encouraging people to report elder abuse and file elder abuse lawsuits."  (*Lickter*, *supra*, 189 Cal.App.4th at p. 730.)

As we will explain, the trial court's acceptance of Cameron's conditional disclaimer, and the resulting dismissal under section 17202, was contrary to public policy and an abuse of discretion.  The trial court was of the view that it could invite Cameron's disclaimer because will contests are disfavored, and that Cameron's disclaimer would amount to a settlement.  Neither is correct.

The notion that will contests are disfavored is grounded in the same public policies supporting no contest provisions—"the public policies of discouraging litigation and giving effect to the purposes expressed by the testator."  (*Estate v. Black* (1984) 160 Cal.App.3d 582, 586–587; see also *Estate of Kaila* (2001) 94 Cal.App.4th 1122, 1128.)  But the public policy disfavoring litigation does not give the trial court the authority or discretion to dismiss a beneficiary's petition.  Our Supreme Court has long recognized that any policy disfavoring will contests is countered by " 'the right of a citizen to have his claim determined by law.' "  (*Lobb v. Brown* (1929) 208 Cal. 476, 490–491 (*Lobb*); see also *In re Estate of Hite* (1909) 155 Cal. 436, 439 ["Public policy dictates that the courts of the land should be open, upon even terms, to all suitors."].)  In strictly construing a forfeiture clause in an undue influence will contest, the Supreme Court in *Lobb* recognized that "public policy demands that full and complete opportunity should be given to all interested parties to test the validity of such a testamentary document, not only to protect that which may be rightfully and legally theirs, but also to preserve the wishes and desires of the testatrix against designing persons seeking to take advantage of her age and infirmities which are the usual result of advanced years."  (*Lobb*, at pp. 491–492.)

10

The public policy recognized by the Supreme Court in *Lobb* has resonated more recently in a 2007 California Law Revision Commission report examining the enforceability of no contest clauses. The Commission reported that no contest clauses can be used to shield fraud or undue influence from judicial review, and it recognized that "the policy of effectuating the transferor's intentions" would be undercut if a challenge to a testator's capacity could be thwarted by a no contest clause. (37 Cal. Law Revision Comm. Rep. (2007) at pp. 362, 370–371.) It recommended enacting a probable cause exception to a no contest clause's enforceability for undue influence type challenges. (*Id*. at p. 362.)

Here, trial commenced with Bennett, a vested beneficiary having a pecuniary interest in the proceedings, ready to prosecute his undue influence and lack of capacity claims. As the petitioner, Bennett had weighed the risk of a loss (including, as Michael had made clear in his settlement conference statement, a forfeiture challenge to Bennett's and Holly's interests in William's estate) against his right to have a court determine whether his grandfather's testamentary intent was reflected in the 2008 amendment. In light of long-held policies of effectuating a testator's intent and dissuading elder abuse, we conclude that the trial court abused its discretion by inviting a dismissal of the action and accepting Cameron's conditional disclaimer with the stated objective of terminating the litigation.

Further, Cameron's disclaimer was necessarily limited to Cameron's interest in the 2008 amendment. Thus, the trial court's dismissal had the incongruous result of implementing the 2008 amendment with respect to Michael and his siblings but the 2005 amendment with respect to Cameron and William's other grandchildren.[5]

---

[5] The trust, as it existed after the 2005 amendment, excluded Michael and Cameron as beneficiaries, and had Marjorie serving as first successor trustee. The 2008 amendment, at issue here, added Michael and Cameron as beneficiaries by reducing the interests of the grandchildren's trust and residuary beneficiaries, and named Michael instead of Marjorie as first successor trustee.

We acknowledge the competing policy supporting will contest settlements "in the interest of the preservation of family ties, the adjustment of equities, and avoiding nonproductive waste of the assets of the estate." (*Estate of Schuster* (1984) 163 Cal.App.3d 337, 342.) However, the trial court's interpretation of Cameron's disclaimer as a *settlement* was incorrect. A settlement is an agreement among adverse parties, and Bennett did not agree to settle the case. The court's acceptance of Cameron's conditional disclaimer did not preserve Bennett's family ties or promote equities vis-à-vis Bennett. By thwarting Bennett's petition, Cameron's $64,286 disclaimer protected his father's one-quarter interest in the residue, an interest that approximated $825,000 as of William's death. The disclaimer also shielded Michael from having to defend against allegations affecting his interest in and management of William's estate.[6]

Under the facts of this case, the court abused its discretion by dismissing the petition under section 17202 as not reasonably necessary for the protection of Bennett's interest. Setting aside Cameron's disclaimer, Bennett, a vested beneficiary with a pecuniary interest in the proceeding, was deprived of the right to challenge the 2008 amendment on undue influence and lack of capacity grounds. (See *Jay v. Superior Court*, *supra*, 10 Cal.App.3d 754 at p. 758.) We conclude that Bennett was entitled to a trial on his petition, and that the court abused its discretion by promoting a dismissal which deprived him of his interest in a trial. We will remand the matter for the trial court to strike Cameron's disclaimer and resume proceedings on Bennett's claims.

---

[6] The parties disagree as to whether Michael would be required to resign as trustee should Bennett prevail on his petition. In post argument letters, Michael argues that his appointment as successor trustee would not be affected by Bennett's petition because he has been serving as trustee under a 2009 Successor Trustee Acceptance executed after William resigned as trustee, and Bennett's petition had not alleged that William's resignation or Michael's acceptance were invalid. Bennett argues that William's resignation did not amend the trust, and that the 2001 amendment would govern the succession of trustees.

In light of that disposition, we do not address Bennett's other grounds for reversal, including the alleged error flowing from the court's interlineation on the judgment prepared by Michael's counsel.

## IV.  DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Appellant is entitled to costs on appeal.

_____

Grover, J.

**WE CONCUR:**

_____

Rushing, P.J.

_____

Márquez, J.

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-12-PR-170606 |
|---|---|
| Trial Judge: | Carrie A. Zepeda-Madrid |
| Counsel for Plaintiff/Appellant<br>Edward Bennett Gregge | Kenneth W. Kossoff<br>Donna M. Klugman<br>Panitz & Kossoff, LLP |
| Counsel for Defendant/Respondent<br>Michael Hugill, as Trustee | Paul D. Fogel<br>Dennis Peter Maio<br>Reed Smith LLP<br><br>Sheri Lynn Sudweeks<br>Sugai & Sudweeks, LLP |