[Civ. No. 33669.   Second Dist., Div. Four.   Oct. 3, 1969.]

Estate of ELSIE M. HAGBERG, Deceased. WILLIAM GORDON GOEDIKE, Petitioner and Respondent, v. ROY C. HAGBERG, Claimant and Appellant.

Overton, Lyman & Prince, Edmond R. Davis and Frederick A. Clark for Claimant and Appellant.

Little, Ross & Pierson and Edward M. Ross for Petitioner and Respondent.

KINGSLEY. J.—Elsie Hagberg, the decedent herein, died on December 4, 1966, survived by her husband, appellant Roy Hagberg, and by a son of a previous marriage—respondent William Goedike. On August 9, 1963, she had executed a holographic will, in which she gave to her son two items of property, described as follows:

(1) ". . . my sole interest in and to my one-half share of Service Blueprint and/or anything standing in its name.";

and (2) ". . . my share in and to the property owned in joint tenancy with my husband Roy C. Hagberg, located at 804 and 808 Hindry Ave., in the City of Inglewood, Calif." The will designated the son—Goedike—as "Administrator."

Although, as will hereinafter appear, she died possessed of a substantial estate, the will made no disposition of any assets other than the two items above described. As will also appear, the Hindry Avenue property had been sold during her lifetime and its proceeds were represented by two promissory notes secured by trust deeds on that property and, it is alleged by Goedike, by an investment in another piece of real property on Stepney Avenue in Inglewood.

The will was admitted to probate and Goedike was appointed and qualified as its executor.

Goedike filed an inventory and appraisement, in which he listed 14 items, evaluated at $41,998.06. Three items, evaluated at $1,046.67, were designated as being community property; five items, evaluated at $10,210.50, were designated as being the separate property of decedent; six items, evaluated at $30,740.89, were listed as being "decedent's separate property held in joint tenancy with Roy Hagberg, surviving spouse, for convenience only." Two of the items so designated as being held in joint tenancy were the Stepney Avenue property (item 6), and the two promissory notes secured by trust deeds on the Hindry Avenue property (item 7), the two items being evaluated at $28,722.12.

Goedike thereafter filed a petition to determine heirship, in which he alleged that the Hindry Avenue property had been sold, resulting in the notes listed as item 7 in his inventory and in cash invested in another piece of property, listed as item 6 in his inventory. He prayed that the court determine that those items were community property[1] and that he be found to be entitled to one-half thereof as devisee under the will. Notice of that proceeding was given to Hagberg but he did not appear. The court made its order determining that the real property and notes were community property. Hagberg has appealed from that order.

Goedike filed an amended inventory and appraisement, covering the same items as in the original inventory, but with some changes in the designation of their character. In the new

---

[1]Nothing in the record before us explains the change of position from the allegation in the original inventory that these items were the separate property of decedent to the allegation in the petition to determine heirship that they were community property.

inventory and appraisement, he listed nine items, evaluated at $30,806.29, as being community property. Of the items thus designated, three were the items designated as being community in the original inventory; two, evaluated at $400, were items designated in the original inventory as being decedent's separate property. Three items (including the notes and trust deeds on the Hindry Avenue property and the Stepney Avenue property), evaluated at $29,147.12, which had been designated in the original inventory as being the separate property of decedent but held in joint tenancy "for convenience," were now designated as being the "community property of decedent and her surviving spouse, Roy C. Hagberg, . . . held in joint tenancy for convenience only"; one item evaluated at $212.50, which had been designated in the original inventory as being the separate property of decedent, was also now listed as being community property held in joint tenancy for convenience. The new inventory also listed as separate property the remaining two items so designated in the original inventory; three items, originally designated as being decedent's separate property held in joint tenancy for convenience only, were now listed as being true joint tenancy property. As we have noted above, the record is devoid of any explanation for the shift in the characterization of the status of the several items.

Thereafter, Goedike filed a document, executed by himself only, entitled "Waiver of Accounting and Petition for Final Distribution." Although the order made on that petition recites that "Due notice of the hearing of the petition has been regularly given as required by law," the record is devoid of any proof of service thereof on Hagberg and he did not appear at the hearing. The court made a decree of final distribution in which it distributed to Goedike not only the Service Blueprint asset, and an undivided one-half interest in the Stepney Avenue property and in the notes and trust deeds on the Hindry Avenue property, but also five items not disposed of by the will. Hagberg has appealed from that decree.[2]

## I

The decree determining heirship must be reversed in part for two reasons: (1) the probate court had no jurisdiction, on

[2]Hagberg, being a party interested in the probate proceedings, and being adversely affected by the orders herein involved, can appeal from them even though he did not appear and participate in the proceeding below. (*Estate of Meyer* (1966) 241 Cal.App.2d 747, 750-751 [51 Cal. Rptr. 72].)

the executor's petition, to determine a disputed issue of title against an adverse claimant; and (2) there is no basis for the implied finding that the Stepney Avenue property passed under a testamentary provision dealing with a bequest prima facie adeemed.

## II

██ Appellant's first argument is that the superior court, sitting in probate, does not have jurisdiction to try title to property as between a representative of the estate and a stranger to the estate. (*Wilson* v. *Superior Court* (1951) 101 Cal.App.2d 592 [225 P.2d 1002].) ██ Appellant points out that a spouse who claims property as a surviving joint tenant has the status of a stranger to the estate of the decedent. (*Goldberg* v. *Goldberg* (1963) 217 Cal.App.2d 623 [32 Cal.Rptr. 93]; *Estate of Scarlata* (1961) 193 Cal. App.2d 35 [14 Cal.Rptr. 184]; *Morris* v. *Berman* (1958) 159 Cal.App.2d 770, 796 [324 P.2d 601].)

██ Under the above rules of law it is clear that the probate court would not have jurisdiction over the question before us, since the husband's (appellant) claim is adverse to the estate. However, it is necessary to determine whether recent exceptions to the rule that the superior court sitting in probate is without jurisdiction to try title to property as between a representative of the estate and a stranger to the estate, would apply to the case at bench such that the lower court would have jurisdiction. The recent case of *Estate of Baglione* (1966) 65 Cal.2d 192 [53 Cal.Rptr. 139, 417 P.2d 683], held that, when a party invokes the jurisdiction of a court sitting in probate by asserting a substantive right in a particular piece of property or in certain assets as an heir, legatee or devisee, he may also obtain a judgment in that court determining any additional claims that he asserts against those in privity with the estate in the same property. The Supreme Court said, at page 197, ". . . once the court determined that Marie [the wife of the decedent] had a community interest in the Lake Tahoe property subject to probate, it should have resolved the entire controversy and determined her rights to that property under the alleged oral agreement [creating a joint tenancy] with the deceased." Thus in *Estate of Baglione* the wife, by asserting her right to her statutory share of the community property, was claiming in privity with the estate (Prob. Code, § 202); and she thereby properly invoked the court's jurisdiction over the entire controversy. This ruling in *Baglione* was consistent with

the earlier Supreme Court case of *Woods* v. *Security-First Nat. Bank* (1956) 46 Cal.2d 697 [299 P.2d 657], which held that, if a surviving spouse invokes probate jurisdiction, the jurisdiction is not lost if that spouse also presents an adverse contractual claim against the estate.

However, in the case at bench, the appellant husband never invoked the jurisdiction of the court such that the court could then have jurisdiction also over the husband's adverse claims. As we have stated earlier, the husband's claim to joint tenancy property is adverse to the estate. (*Goldberg* v. *Goldberg, supra* (1963) 217 Cal.App.2d 623.) The husband in the case at bench did not invoke jurisdiction of the probate court either by asserting a substantive right as heir, legatee, or devisee or by participating in the probate proceedings. (See *Estate of Plum* (1967) 255 Cal.App.2d 357 [63 Cal.Rptr. 241].) Under the circumstances of this case, the probate court was not free to try the question of joint tenancy or any claim adverse to the estate. (See (1967) 7 Santa Clara Law. 275, *An Extension of Probate Jurisdiction; Estate of Baglione, supra* (1966) 65 Cal.2d 192.)

The recent case of *Estate of Casella* (1967) 256 Cal.App.2d 312 [64 Cal.Rptr. 259], while using some broad language in referring to the court's jurisdiction, did not actually expand the probate court's jurisdiction beyond the expansion announced in *Baglione*. Although the court never expressly examines the question of how the wife originally invoked the jurisdiction of the probate court, or even if that is a necessary prerequisite for the court to then decide the wife's adverse claim in joint tenancy, the wife did originally allege that all the property was community property, until she changed her contention that it was joint tenancy property. A surviving wife's claim to community property is in privity with the estate (Prob. Code, § 202); by making such a claim she thereby invoked the court's decision. There is nothing in the *Casella* case, even in spite of some very broad language, which actually dispenses with the requirement that the court's jurisdiction must be originally invoked before the court can decide related adverse claims.

Respondent argues that finding that property is in fact community property and that it was held in joint tenancy only as a matter of convenience "was no determination of title" and therefore the court had jurisdiction. That this is a determination of title is implicit within such cases as

*Wilson* v. *Superior Court, supra* (1951) 101 Cal.App.2d 592.

### III

The probate court did have an undoubted jurisdiction to determine, on the petition to determine heirship, whether or not the devise of the Hindry Avenue property had been adeemed by its sale during the lifetime of the testator. ■ Prima facie, such a sale works an ademption of the devise (4 Witkin, Summary of Cal. Law (7th ed. 1960) Wills & Probate, § 150 pp. 3141-3142). But, if the subject matter of the gift is not entirely extinguished, but has merely changed form, the gift may still survive if that was the intention of the testator. (*Estate of Moore* (1955) 135 Cal.App.2d 122 [286 P.2d 939].)

As far as the record discloses, the court took no evidence on the issues raised by the petition to determine heirship but decided it solely on the undisputed allegations in the verified petition. That petition alleges, insofar as the issue of ademption is concerned, only that

". . . the property at 804 and 808 Hindry, Inglewood, California, was subsequently sold and that the purchasers paid cash and executed the promissory notes described in Exhibit A, attached hereto, as consideration for the properties. That decedent and her surviving spouse, Roy C. Hagberg used the cash thus received to purchase the improved real property at 454 Stepney, Inglewood, California."

■ As we read the decision in *Moore,* the facts thus alleged were sufficient to support the implied finding that the notes and trust deeds on the Hindry Avenue property passed under the will, insofar as decedent had any testamentary power over them, to Goedike. The determination in *Moore* rested on the ground that the purchase money trust deeds and notes represented an interest in the real property originally devised, so that they represented a mere change in form and that an intent not to work an ademption might be inferred from that fact.

■ But the Stepney Avenue property is not of the same character. It was not, itself, a part of the consideration for the sale of the Hindry Avenue property, nor is it an interest of any kind in the devised property. We know of no authority to support the theory that a mere tracing of the proceeds of a sale of devised property will, at least without evidence that the testator intended the new investment to be a substitute for the devise, avoid the general rule of ademption by extinction.

As we have seen, there was neither allegation nor proof of any such extraordinary intent on the part of decedent. Insofar as the decree impliedly holds that the Stepney property was devised by the will, it is without evidentiary support and must be reversed.

## IV

The decree of final distribution must also be reversed for several reasons: (1) Insofar as it implements the erroneous portions of the decree determining heirship, it falls with the reversal of those portions of that decree; (2) it was made and entered in error because it was not based on a statutorily required accounting; (3) it was in error insofar as it disposed of items not devised or bequeathed by the will, in violation of the provisions of sections 201 and 221 of the Probate Code.

As we have noted, the purported waiver of accounting was executed only by Goedike. But the statute (Prob. Code, § 922), requires an accounting from the executor and that requirement can be waived only by all of the potential distributees. As appellant points out, there are a number of issues, including the computation of fees and of the estate taxes, which require careful examination. We need not examine them in detail on this appeal; their resolution is primarily for the trial court when Goedike files a proper account and prays for its approval. In addition, although the distribution to Goedike of decedent's interest in the Service Blueprint asset seems, prima facie, to be correct, the propriety of that action cannot be determined until his accounting has been tendered and approved and it is clear that it need not be sold in order to complete administration of the estate and that his prima facie interest therein is not subject to any surcharge.

As we have pointed out, the decree of distribution distributes to Goedike five items which, under no theory, passed under the will. Since Mrs. Hagberg died intestate as to those items, all of the community assets passed to Hagberg by virtue of section 201 of the Probate Code, and the two items of separate property passed to Goedike and to Hagberg, in equal shares, under section 221 of the Probate Code.

The decree determining heirship is reversed, except insofar as it impliedly determines that any interest in the notes and trust deeds on the Hindry Avenue property over which decedent had any power of testamentary disposition are included in the devise of the Hindry Avenue property. The

decree of distribution is reversed in its entirety. The case is remanded for further proceedings consistent with this opinion. Costs on appeal and Goedike's attorneys fees on this appeal shall be borne by Goedike personally and shall not be chargeable to the estate.

Files, P. J., and Dunn, J., concurred.