[No. A030705. First Dist., Div. Two. Nov. 10, 1986.]

Conservatorship of the Estate of JOHN J. COFFEY.
JOHN E. COFFEY, Petitioner and Respondent, v.
JOHN DAVID ROTHSCHILD, as Former Conservator, etc.,
Objector and Appellant.

1434

COUNSEL

Michael F. O'Donnell and Geary, Shea & O'Donnell for Objector and Appellant.

Gail Boreman Bird and Douglas Jackson Bird for Petitioner and Respondent.

OPINION

BENSON, J.—The beneficiary of a life insurance policy petitioned the probate department of the Sonoma County Superior Court to reopen the final account of a former estate conservator and to surcharge that conservator for the loss of policy benefits resulting from a breach of duty in allowing the policy to lapse. The former conservator, John David Rothschild, appeals from a judgment of the probate court setting aside his final accounting and discharge and surcharging him in the sum of $13,500 and accumulated interest, payable to the policy beneficiary, the respondent, John E. Coffey. We affirm the judgment.

The facts are as follows. On October 1, 1962, John J. Coffey (Jack Coffey) was issued a guaranteed renewable group term life insurance policy (number 9852) by Cal Western Life Insurance Company. The policy had a death benefit of $13,500 payable to John E. Coffey, Jack Coffey's son. Semiannual premium payments were due on April 1 and October 1 of each year. If payment was not received on or before the due date, the policy would lapse. However, the lapse could be automatically cured and the policy reinstated if payment was received within 60 days of the premium's due date.

In 1977, Jack Coffey suffered a stroke. The following year his estate was placed in conservatorship. Respondent was appointed conservator of his father's estate and served in this capacity until relieved of the responsibility by appellant John David Rothschild who became the successor conservator. The record reflects that a stipulation in open court on February 19, 1981, brought about an agreement that respondent would resign the conservatorship and that appellant would be appointed in his place. Respondent's final accounting reveals he concluded his conservatorship activity on March 16, 1981. Appellant's first and final accounting reveals he commenced his activities as conservator on March 17, 1981. Appellant filed his first and final accounting on October 20, 1981, which covered the period from March 17 to September 29, 1981. However, he continued to pay important obligations and debts of the conservatee's estate until his discharge as conservator in early December, 1981.

Appellant at all relevant times was a licensed attorney whose practice included probate and conservatorship matters. Appellant continued to serve as conservator of Jack Coffey's estate until December 8, 1981, when, after hearing, a court order settled his first and final accounting and discharged him as conservator. At that point in time Sally Kaplan took over as conservator and continued to serve as such until Jack Coffey's death on July 26, 1982.

In November 1982 respondent was informed by his attorney that several life insurance policies had lapsed before Coffey's death. Among them was the Cal Western policy number 9852 which had lapsed on October 1, 1981 due to failure to pay the requested premium of $196.87. The 60-day reinstatement period had passed on November 30, 1981 without the premium having been paid. The policy lapse was not mentioned in Rothschild's October 20th final accounting nor was the matter otherwise brought to the court's attention at the time of the hearing to settle the account. The policy was not listed as an asset on Rothschild's inventory, nor had it been listed on the respondent's inventories. Respondent, upon learning of the lapsed policy, petitioned the court to reopen Rothschild's final accounting as conservator and to surcharge him for the lost insurance proceeds.

At the hearing on the petition, Dorothy Gleason, manager of the policyholder service department of the insurance agency which administered the group plan, testified that the last premium payment for policy number 9852 was made on April 20, 1981, covering the premium due on April 1, 1981. Appellant's final accounting shows that he had made the payment. Mrs. Gleason testified that since 1978 notices had been sent to a post office box established for the conservatorship. She testified that Cal-Western, in addition to sending out the premium due notice, mails three additional notices advising of a lapsed policy where a premium payment had not been received and that a member of her staff spoke with Rothschild's office by telephone, on November 24, 1981, regarding the lapsed policy. Respondent John E. Coffey testified that he had given Rothschild the only key to the conservatorship's post office box when the latter took over the conservatorship.

Rothschild's testimony acknowledged that he had made the April premium payment but stated that he was unaware that a further premium payment was due in October. He admitted making no effort to determine the terms of the policy and testified that respondent had never given him a copy of the policy. He denied having received the premium due notice or any of the subsequent reminder notices and testified that his secretary had not informed him of a conservation call from the agent's office.

The parties stipulated that at the time the policy lapsed Jack Coffey was in such ill health he was no longer insurable.

Following the hearing and additional briefing, the probate court issued a tentative decision wherein it found Rothschild responsible for the lapse of the policy, and expressed agreement with respondent's interpretation of the facts.[1] Rothschild requested a statement of decision which, after several objections, was duly prepared and filed by the court. A judgment surcharging Rothschild in the sum of $13,500 was entered and this appeal followed.

## I

Appellant first contends that the order settling his first and final accounting and discharging him as conservator is final under Probate Code section 2103.[2]

Section 2103 provides in full as follows: "(a) Unless reversed on appeal, a judgment, order, or decree made pursuant to this division is final and releases the guardian or conservator and the sureties from all claims of the ward or conservatee and of any persons affected thereby based upon any act or omission directly authorized, approved, or confirmed in the judgment, order, or decree. For the purposes of this section, 'order' includes an order settling an account of the guardian or conservator, whether an intermediate or final account. [¶] (b) This section does not apply where the judgment, order, or decree is obtained by fraud or conspiracy or by misrepresentation contained in the petition or account or in the judgment, order, or decree as to any material fact. For the purposes of this subdivision, misrepresentation includes but is not limited to, the omission of a material fact."

We hold that appellant's failure to inform the probate court of the policy lapse constituted an omission of material fact within the purview of section 2103, subdivision (b), and effectively negated the finality and releasing provisions of 2103, subdivision (a), as to the particular transaction which was the subject of the omission. As observed by the reviewing court in *Bank of America* v. *Superior Court* (1986) 181 Cal.App.3d 705, 715 [226 Cal.Rptr. 685], ". . . a guardian or conservator is not entitled to assert a res judicata bar as to transactions which were not fully disclosed to the court . . . ." Appellant here, if he wished to avail himself of the protections afforded by the application of res judicata, had first to inform the court of the existence of a valid life insurance policy during the term of his conservatorship and the justifications, if any, which caused him to

---

[1]This tentative decision expressed the mistaken belief that an absence of death benefits listed in the estate's assets was one of the reasons that Rothschild should have known he had omitted to inform the court of the lapse. As Jack Coffey did not die till nine months after his discharge, it was impossible to list death benefits. The error was corrected by the court by omitting this language from the statement of decision.

[2]All statutory references, unless otherwise noted, are to the California Probate Code.

allow the policy to lapse. The court, then knowledgeable of the transaction, could consider the propriety of his actions or inactions.

Statutory authority provides that the right of a conservator to terminate a life insurance policy may be exercised only after authorization or direction by court order. (§ 2459, subds. (b)(1), (c).) Further, with respect to any transaction where court authorization was required, but not obtained, the transaction is subject to review by the court upon the next succeeding accounting of the conservator occurring after the transaction. (§ 2625.) Here, the life insurance policy constituted a part of the estate subject to appellant's conservatorship. The clear statutory obligations imposed upon appellant, required that the matter of its termination be brought to the probate court's attention. It was not. The order of the probate court settling appellant's account, like an order settling the account of a trustee, executor or administrator, is conclusive as to all matters passed upon but is not binding as to those matters not passed upon. (*Lazzarone* v. *Bank of America* (1986) 181 Cal.App.3d 581, 591-592 [226 Cal.Rptr. 855]; see also *Estate of de Laveaga* (1958) 50 Cal.2d 480, 487 [326 P.2d 129].)

Appellant argues that the absence of an accounting disbursement entry showing payment of the October premium constitutes a "negative sort of disclosure of nonpayment," since respondent was aware of the policy's existence and had himself made premium payments. Thus, he argues, we should treat the nonpayment as a disclosed fact, rendering inapplicable the misrepresentation by omission exception to the res judicata provision of section 2103, subdivision (a). We reject appellant's position. To do otherwise would require acceptance of a convoluted reasoning process that converts nondisclosure into disclosure and excuses the performance of statutory duties required in the management and control of the conservatee's estate.

## II

 Appellant next contends that the superior court, while sitting in probate, is without the jurisdiction or authority to surcharge the conservator for a loss suffered not by the estate, but by the beneficiary of an insurance policy which was a part of the estate.

Appellant readily concedes that the probate court has the power to surcharge an errant conservator for the benefit of the estate (e.g., *Estate of Hilde* (1952) 112 Cal.App.2d 189 [246 P.2d 79]), but asserts that no authority exists to render such an assessment in favor of a third party. We are unaware of any case which addresses this question. Therefore, we must examine the statutory scheme surrounding the probate court's authority to surcharge a conservator.

■ Probate court jurisdiction is in the superior court, the probate court merely being a department of the superior court exercising such jurisdiction. (§ 301; *Copley* v. *Copley* (1978) 80 Cal.App.3d 97, 107 [145 Cal.Rptr. 437].) However, the jurisdiction and powers of the probate court are wholly statutory, and therefore limited. (See *Copley* v. *Copley, supra,* 80 Cal.App.3d at p. 108; *Neubrand* v. *Superior Court* (1970) 9 Cal.App.3d 311, 318 [88 Cal.Rptr. 586]; *Texas Co.* v. *Bank of America etc. Assn.* (1935) 5 Cal.2d 35 [53 P.2d 127]. """"Probate proceedings being purely statutory, . . . the superior court, although a court of general jurisdiction, is circumscribed in this class of proceedings by the provisions of the statute conferring such jurisdiction, and may not competently proceed in a manner essentially different from that provided."""" (*Id.* at p. 39.)

■ Authority to surcharge the conservator is given to the probate court by section 2625 as a collateral power to its duty to review the actions of a conservator. This section reads in pertinent part: "Any sale or purchase of property or other transaction not previously authorized, approved, or confirmed by the court is subject to review by the court upon the next succeeding accounting of the guardian or conservator occurring after the transaction. *Upon such accounting and review, the court may hold the guardian or conservator liable for any violation of duties in connection with the sale, purchase, or other transaction.*" (Italics added.) This language is very broad, reinforcing one of the probate court's most important goals—to insure that ordinary care and diligence has been exercised by the conservator in the management and control of the estate as required by section 2401. Authorization is extended to the probate court to impose personal liability on the conservator for any violation of duty in connection with his management and without regard to whether the estate or some other beneficiary has suffered by the conservator's breach.

That the current case is the first opportunity this court has had to address the surcharging of a conservator for damage to a party other than the estate is hardly surprising. Under most instances where a conservatorship asset is lost, no one other than the estate has a current interest in any of the property under the conservator's administration. However, the enactment of section 2459 recognizes that for some assets (such as life insurance policies, annuities, retirement plans and the like) the beneficiary has an interest which the probate court should protect.[3] The comment of the Law Revision Com-

---

[3]Section 2459, subdivisions (a) through (c) reads: "(a) The guardian or conservator may obtain, continue, renew, modify, terminate, or otherwise deal in any of the following for the purpose of providing protection to the ward or conservatee or a person legally entitled

mission which accompanied section 2459 explains this interest as follows: "subdivision (c) requires court authorization under the provisions relating to substituted judgment for actions that would effect the expectancies of beneficiaries of insurance policies or other benefit plans." This subdivision was created with the intent that actions by the conservator which effect the interests of life insurance beneficiaries be subject to court review under section 2625.[4] We must therefore interpret this statute as providing authorization to the probate court to surcharge the conservator for the benefit of third party beneficiaries of the class of assets listed under section 2459, subdivision (b). Any other conclusion would result in the probate court being statutorily directed to oversee the rights of these beneficiaries but withholding the authority to remedy an infringement of those rights. Here, the insurance policy was beyond replacement at the time the lapse was discovered and therefore a surcharge for the benefit of the expectant beneficiary was the only remedy available.

Appellant urges that section 2625 precludes such an action by the probate court, noting that language in the comment accompanying section 2625 refers only to surcharges for damages to the estate.[5] However, the part of the comment which appellant refers us to is primarily a statement of the probate court's right to surcharge a conservator in general rather than a statement of the Legislature's intent regarding who may receive a surcharge.

We might find appellant's argument more persuasive if the charging of the conservator for damages sustained by parties other than the estate was

---

to support from the ward or conservatee:

"(1) Medical, hospital, and other health care policies, plans, or benefits.

"(2) Disability policies, plans or benefits.

"(b) The conservator may continue in force any of the following in which the conservatee, or a person legally entitled to support, maintenance, or education from the conservatee, has or will have an interest:

"(1) Life insurance policies, plans, or benefits.

"(2) Annuity policies, plans, or benefits.

"(3) Mutual fund and other dividend reinvestment plans.

"(4) Retirement, profit sharing, and employee welfare plans or benefits.

"(c) The right to elect benefit or payment options, to terminate, to change beneficiaries or ownership, to assign rights, to borrow, or to receive cash value in return for a surrender of rights, or to take similar actions under any of the policies, plans, or benefits described in subdivision (b) may be exercised by the conservator only after authorization or direction by order of the court. To obtain such an order, the conservator or other interested person shall petition under Article 10 (commencing with Section 2580)."

[4]Sections 2459 and 2625 were part of the comprehensive effort by the California Legislature to completely rewrite the California guardian and conservatorship law. (Stats. 1979, ch. 726, p. 2334, § 3, operative Jan. 1, 1981.)

[5]Appellant refers to the following language in the Law Revision Commission's comment to section 2625 from the 1979 revision: "A guardian or conservator may be surcharged for improper payments or other wrongful acts or omissions that cause pecuniary damage to the estate. See discussion in W. Johnstone & G. Zillgitt, California Conservatorships, § 6.43, at 253-54 (Cal.Cont.Ed.Bar 1968 [2d ed. 1983])."

not specifically contemplated in other sections of the Probate Code. Section 2615 states (in part) that, "the guardian or conservator is liable for damages for any injury to the estate, or to any interested person," when damages result from conservator's failure to timely file an inventory. If third party awards are contemplated within one area of the Probate Code, it is hard to lend credence to an argument that such powers are outside the legislative scheme.

■ Collateral to this contention is appellant's assertion that the action below deprived him of his constitutional and statutory right to a jury trial. The court addressed this issue at length in *Estate of Beach* (1975) 15 Cal.3d 623, 642-644 [125 Cal.Rptr. 570, 542 P.2d 994].

In *Beach,* trust beneficiaries contested the executor's accounting, alleging negligence in his handling of estate assets and demanded a jury trial of the factual issues raised by the contest. The probate court rejected the jury demand and, following court trial, found against the contestants. They appealed, urging inter alia, error in denying their request for a jury. The Supreme Court affirmed the judgment and addressing the jury trial contention declared unequivocally that "There is no right to a jury in probate proceedings unless that right is granted by statute." (*Id.* at p. 642.) In explaining why claims for mismanagement of a probate estate are inappropriate for jury resolution, the court noted: "Such claims, unlike ordinary claims for negligence or malpractice, are necessarily based on conduct that is subject to the independent control and supervision of the very court before which the claim must be asserted. As we said in *Estate of Sanderson* [1887] 74 Cal. 199, 208 [15 P. 753]: '. . . the proceeding in probate for the settlement of an account is *sui generis,* bearing but a distant and incomplete analogy to the procedure for an accounting in equity. The executor or administrator derives his power to act as such from the will, or order of the court; but in his conduct of the affairs of the estate, he is subjected largely to the discretion and control of the court. The court is bound to protect the estate, and, as far as may be, the rights of all concerned. . . .' [Citation.] In short, to subject the court's determination of the propriety of an executor's acts in the course of administering the estate to contradiction by a jury verdict would tend to dilute and undermine the court's ongoing responsibility for detecting and correcting executorial mismanagement." (*Id.* at p. 643.) The sound reasoning of the *Beach* and *Sanderson* courts is applicable to the case before us.

As the probate court had jurisdiction to hear the objections from which this claim for breach of duty arises, there is clearly no right to a jury trial.

## III

■ Appellant next contends the judgment is not supported by the evidence. ■ In considering the lower court's decision, we must review the evidence in the light most favorable to respondent and indulge all reasonable intendments and inferences that tend to sustain the judgment. (*Estate of Beach, supra,* 15 Cal.3d at p. 631; *McCarthy* v. *Tally* (1956) 46 Cal.2d 577, 581 [297 P.2d 981]; *Berniker* v. *Berniker* (1947) 30 Cal.2d 439, 444 [182 P.2d 557]; *Estate of Bristol* (1943) 23 Cal.2d 221, 223 [143 P.2d 689].)

■ There was clearly sufficient evidence to support a finding that Rothschild breached his duty in permitting the policy to lapse. Evidence was presented at trial that Rothschild knew the policy existed and had paid one premium on it; that Cal-Western Life Insurance Company mailed a premium due notice and several subsequent default notices to the conservatorship's post office box; that the conservator regularly had the conservatee's mail picked up at his post office box; that the insurance agency had made a conservation call to Rothschild's office informing his secretary of the policy's status; that Rothschild had made no effort to investigate the terms of the policy; that Rothschild had copies of John Coffey's accounting which showed the previous timing of payments during 1978, 1979 and 1980. It was clearly reasonable for the probate court to conclude Rothschild had breached his duty to exercise ordinary care and diligence in the management of conservatorship assets.

## IV

■ Appellant contends that respondent was at least guilty of contributory fault leading to his own loss. He asserts that the trial court either failed to consider this issue or, having considered it, failed to decrease the judgment to reflect the uncontroverted evidence of substantial fault by the respondent. Appellant predicates the issue on two evidentiary matters: first, respondent's failure, while serving as conservator, to list the policy in the conservatorship inventory on three occasions; and second, because the accounting, a copy of which had been served by mail upon respondent at his request, did not indicate payment of the October premium, respondent should have detected this omission and brought it to appellant's attention or taken any other steps to avoid forfeiture of the policy.

Looking initially to the facts upon which appellant makes his claim of comparative fault, we find they are legally insufficient to support his position. Respondent's earlier failure to inventory the policy is without relevance and causal nexus where, as here, appellant's actual knowledge of the policy's

existence is irrefutably evidenced by his having made the April premium payment. Regarding respondent's alleged failure to warn appellant or otherwise take steps to avoid a lapse of the policy, we find this contention also legally insufficient to support a finding of fault on respondent's part. It presupposes that respondent had scrutinized the disbursement details of the accounting, had detected the omission, had realized there was a need to warn appellant and had neglected to do so. None of these factors are supported by the record. More importantly to accept the appellant's contention we would in effect impose a duty upon the beneficiary to oversee the activities of the conservator, to scrutinize accountings and to detect omissions, to warn or take other action, all under the threat of losing, in whole or in part, a benefit which, in the first instance, the conservator had the statutory duty to conserve. Sound policy considerations require that we reject the imposition of such a duty, for otherwise we would encourage the conservator who had acted with less than ordinary care and diligence to hide his failings by nondisclosure, hoping to eliminate or lessen his liability by the beneficiary's failure to detect the omission.

The position we take in no way dilutes the duty of a beneficiary or other interested person from acting by objection on what they perceive to be a conservator's dereliction based on transactional facts, fairly stated, in an interim or final accounting. (See *Lazzarone* v. *Bank of America* (1986) 181 Cal.App.3d 581, 597 [226 Cal.Rptr. 855].)

V

■ As the issue was squarely raised in the court below, and here, we address the question of whether the doctrine of comparative fault is, in any event, an appropriate consideration in a conservatorship proceeding to reopen an accounting and surcharge the conservator for damage sustained by a beneficiary due to the conservator's failure to exercise ordinary care and diligence. We conclude it is not.

The seminal case of *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] established a comparative fault doctrine for California ". . . in all actions for negligence." (*Id.* at p. 829.) The proceeding before us is not an "action for negligence." It is a statutory proceeding within the exclusive jurisdiction of the probate department of the superior court. The statutory scheme expressly provides for surcharging the conservator in certain instances where, without prior authorization, approval or confirmation by the court, the conservator has undertaken a transaction, violated his duty of ordinary care and diligence and has caused a loss (§ 2625). Nothing in the statute authorizes or suggests a fault weighing process in the surcharging procedure. The conservator need

only request and receive prior court authorization or approval of his action to insulate himself from liability.

Having determined that the doctrine of comparative fault does not apply to this proceeding, we need not address appellant's further contention that the lower court failed to make a specific finding on the issue.

The judgment is affirmed.

Kline, P. J., and Smith, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 28, 1987.