[No. G005873. Fourth Dist., Div. Three. July 29, 1988.]

ORVAL WILLIAM STEWART, as Trustee, etc., Petitioner and Appellant, v.

THOMAS TOWSE, Objector and Respondent.

426

---

---

COUNSEL

Robert L. Risley for Petitioner and Appellant.

Westover & Matthews and Michael B. Hicken for Objector and Respondent.

## OPINION

**SCOVILLE, P. J.**—Orval William Stewart, trustee and beneficiary of an irrevocable trust, appeals the denial of his petition for authority to change the designated successor trustee.

### FACTS

On November 12, 1970, appellant and his wife created an inter vivos trust, the corpus consisting mainly of commercial buildings, at least some of which were community property. The trust was sweepingly amended on June 30, 1983. Under the terms as amended, the death of one trustor triggered a division of the trust estate into three trusts: Trust A, containing the vested community property interests and separate property of the surviving trustor, and Trusts B and C, containing the deceased trustor's interest. The surviving trustor would retain the power to amend or revoke Trust A; Trusts B and C would be irrevocable. The surviving trustor would be a beneficiary of all three trusts. Orval Stewart was named as trustee; Tom Towse was designated as successor trustee should appellant be "unable or unwilling to serve"; Crocker National Bank was designated as alternate successor trustee should Towse himself be unable or unwilling.

Mrs. Stewart died in February 1985. On March 4, 1987, Mr. Stewart's attending physician informed Towse, the designated successor trustee, that Stewart was incapacitated and could not competently manage the trust assets. For more than two months, Towse, in Towse's words, acted as a "quasi successor" trustee. On May 13, 1987, Towse was informed that Stewart had been certified able to manage the trust assets.

On May 21, 1987, Stewart amended Trust A to designate Bruce Englebrecht, not Towse, as successor trustee, and First American Trust Company as the alternate. On the same date, Stewart petitioned the superior court for authority to amend Trusts B and C in the same way. The petition stated Stewart had lost all confidence in Towse because of various business transactions and a perceived conflict of interest, and that allowing Towse to act as a trustee would defeat the purpose of the trust. It also noted the amendments made to Trust A, and urged the infeasibility of having different trustees for different portions of the original trust. The petition further sought authority to amend those provisions of Trusts B and C which concerned certification of the trustee as incapacitated.

Towse, responding to the petition, refused to withdraw voluntarily as successor trustee.

Two adult children of the Stewarts, both remainder beneficiaries, indicated they did not oppose the petition. Various other remainder beneficiaries made no appearance.

The petition was heard in the probate department of the superior court. The judge expressed sympathy for the merits of the petition, but denied it for lack of jurisdiction. The judge opined that Probate Code provisions dealing with removal of trustees implicitly required that the trustee be in place. Stewart argued former Civil Code section 2279.1 authorized the court to modify a trust where failure to so modify it would defeat or substantially impair the purposes of the trust; the judge replied that the statute was limited to modifications necessitated by unforeseen economic developments. Finally, the judge indicated the petition was in essence a declaratory relief action and stated: ". . . I don't think that we have that jurisdiction in probate."

## DISCUSSION

California courts have long had the equity power to modify the terms of a trust where such modification is necessary to preserve the trust or to serve the original intentions of the trustor. (*Adams v. Cook* (1940) 15 Cal.2d 352, 358, 361 [101 P.2d 484]; see also Rest.2d Trusts, § 167, subd. 1.) Former Civil Code section 2279.1, enacted in 1973 and specifically authorizing modification or termination of trusts where the fair market value of the principal had drastically decreased in relation to the costs of administration, preserved the broader power of modification: subdivision (c) thereof stated that "Nothing in this section shall limit any power of the court to permit modification or termination of any trust, as such power existed before the adoption of this section."

The 1986 revisions to the Probate Code codified this power. Probate Code section 15409, subdivision (a), states: "On petition by a trustee or beneficiary, the court may modify the administrative or dispositive provisions of the trust or terminate the trust if, owing to circumstances not known to the settlor and not anticipated by the settlor, the continuation of the trust under its terms would defeat or substantially impair the accomplishment of the purposes of the trust. In this case, if necessary to carry out the purposes of the trust, the court may order the trustee to do acts that are not authorized or are forbidden by the trust instrument." Probate Code section 17200 allows a trustee or beneficiary to "petition the court . . . concerning the internal affairs of the trust" (Prob. Code, § 17200, subd. (a)), and includes as an example a proceeding for the purpose of "[a]pproving or directing the modification or termination of the trust" (Prob. Code, § 17200, subd. (b)(13)).

The 1986 revisions also made clear the jurisdiction and powers of the superior court sitting in probate. Probate Code section 17000 grants, to "[t]he superior court having jurisdiction over the trust," exclusive jurisdiction of proceedings directing the internal affairs of trusts (Prob. Code, § 17000, subd. (a)) and concurrent jurisdiction of actions and proceedings involving trustees and third persons (Prob. Code, § 17000, subd. (b)(3)). Probate Code section 17001 states: "In proceedings concerning the internal affairs of trusts commenced pursuant to this division, the court has all the powers of the superior court." (See also Prob. Code, § 17206.) Finally, Probate Code section 17004 states: "The court may exercise jurisdiction in proceedings under this division on any basis permitted by Section 410.10 of the Code of Civil Procedure."[1] No distinction is drawn in this connection between inter vivos and testamentary trusts.

Applicability of these provisions is governed by Probate Code section 15001. Subdivision (a) of that section makes the new division applicable to all trusts, whether created before, on or after the division's operative date of July 1, 1987. Subdivision (b) provides: "On and after July 1, 1987, this division applies to all proceedings concerning trusts commenced before July 1, 1987, unless in the opinion of the court application of a particular provision of this division would substantially interfere with the effective conduct of the proceedings or the rights of the parties and other interested persons, in which case the particular provision of this division does not apply and prior law applies."

 It is evident from the record that the judge considered neither the effect of the new statutes nor the appropriateness of applying them in this proceeding. These statutes establish ample basis for jurisdiction over Stewart's petition. Stewart's petition asks the court to modify certain terms of the trust, or to authorize him to make modifications otherwise forbidden by the trust instrument, including a change in the designated successor trustee. He bases this request on his loss of confidence in the designated successor trustee, and on his resultant amendment of Trust A to designate a different successor trustee. The request is authorized by Probate Code sections 15409 and 17200. Whether the alleged events constitute circumstances sufficient to justify modification of the trust, and whether the requested modifications would best serve the intent of the trustor, Mrs. Stewart, are matters of merit, not jurisdiction. We note, however, that at the hearing on the petition, Stewart offered to prove that Mrs. Stewart relied on his judgment in selecting the successor trustee.

The judge's description of the petition as, in essence, a declaratory relief action, and his statement that probate could not entertain such an action,

---

[1] Code of Civil Procedure section 410.10 states: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

further indicates his failure to take the new statutes into account. Probate Code sections 17001 and 17004 refute the notion that declaratory relief is beyond the jurisdiction or power of the superior court sitting in probate.

Even if the judge decides application of any or all of the new statutes is inappropriate under Probate Code section 15001, subdivision (b), he may exercise jurisdiction over this proceeding. Former Probate Code section 1138.1 granted the probate department substantial authority over the internal affairs of inter vivos trusts. ■ Where a statute confers jurisdiction on the probate department, that department is empowered to apply legal and equitable principles in aid of its functions. (*Estate of Bissinger* (1964) 60 Cal.2d 756, 764-765 [36 Cal.Rptr. 450, 388 P.2d 682, 19 A.L.R.3d 506]; see also former Prob. Code, § 1138.2.)

In the comparable area of testamentary trust administration, probate jurisdiction to authorize or direct deviation from the trust provisions has been upheld under the former statutes. *Estate of Traung* (1962) 207 Cal.App.2d 818, 827-829 [24 Cal.Rptr. 872] found a statutory basis for such jurisdiction in former Probate Code section 1120, which conferred authority to "pass[ ] upon the acts of the trustee." The court held this statutory language gave the probate department "the power not merely to measure the trustee's acts by the testator's directions but also [to] determine whether the directions should be adhered to inflexibly in all instances. Complete and effectual supervision, we think, results from the court's power to determine, as the court exercising general equity powers does, whether in the light of existing conditions, the primary objectives and dispositive plan of the testator is being subserved or frustrated by his administrative directions. This power is of the essence of the enforcement and administration of trusts." (*Id.* at p. 829.) *Traung* was approved in *Estate of Bissinger, supra,* 60 Cal.2d 756, which noted that to hold otherwise would lead to the "'anomalous situation'" of a trustee's needing to seek the approval of two different courts. (*Id.* at p. 768.)

■ Former Probate Code section 1138.1, subdivision (a)(2), like former Probate Code section 1120, subdivision (a), authorized petitions for the purpose of ". . . passing upon the acts of the trustee." Therefore, the principles set forth in *Traung* and *Bissinger* apply to Stewart's petition.

■ Respondent Towse contends this proceeding is not ripe for resolution. ■ "[T]he ripeness doctrine is primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy." (*Pacific Legal Foundation* v. *California Coastal Com.* (1982)

33 Cal.3d 158, 170 [188 Cal.Rptr. 104, 655 P.2d 306].) ██ The instant proceeding satisfies these concerns. Trusts A, B and C, their corpora consisting largely of interests in the same real property, lend themselves to administration by a single trustee. The current state of the trust instruments makes it likely that Stewart's death or incapacity will trigger an undesirable division of trustee duties. This is true whether or not Towse is able to serve by the time Stewart dies or retires: the designated successor trustee for Trust A, Bruce Englebrecht, is nowhere in the line of succession for Trusts B and C. In addition, Stewart contends the trustor's intent was that the successor trustee for Trusts B and C be someone in whom Stewart had confidence, and that the currently designated successor no longer fulfills that intent. The issues are readily defined; the solution, should Stewart's petition be found meritorious, is straightforward. A decision by the court would be in no sense an advisory opinion.

The judgment is reversed. The case is remanded for further proceedings in light of this opinion.

Sonenshine, J., and Wallin, J., concurred.