[No. B036079. Second Dist., Div. One. Dec. 20, 1988.]

ESTATE OF MAY BARRETT MULLINS, Deceased.
MARY CARTER HAWLEY et al., Petitioners and Appellants, v.
JOHN McSWEENEY, as Trustee, etc., Objector and Respondent.

COUNSEL

Parker, Milliken, Clark, O'Hara & Samuelian, Paul J. Livadary, and Rosa Linda Cruz for Petitioners and Appellants.

Irell & Manella and Charles A. Collier, Jr., for Objector and Respondent.

OPINION

HANSON (Thaxton), Acting P. J.—

## FACTS

On March 3, 1988, Petitioner Mary Hawley filed a petition in Los Angeles County Superior Court for determination of entitlement to trust proper-

ty, for imposition of constructive trust, and for instructions, pursuant to Probate Code section 17200.

The petition alleged the existence of a contract agreement between Hawley and her uncle, Kieram Emmet Mullins, regarding the disposition of his estate after his death and after the death of his wife, May Barrett Mullins. The petition alleged that May and Kieram Mullins, who had no children, frequently told petitioner they intended to leave their half interests in their community property to their respective nieces and nephews after the death of their survivor. In 1983, in failing health, Kieram wished May's assistance in handling his financial affairs. Kieram and May sought the advice of an attorney, John Caldecott, who suggested that Kieram convey title of their community property home to May to allow her to manage their main assets.

Petitioner was present during a meeting during which Kieram and May discussed the transfers with Caldecott and agreed that notwithstanding Kieram's transfers of community property to May, the last one to die would provide for an equal division of the remaining estate between Kieram's relatives and May's relatives. The petition designated this as "the contract agreement." Kieram and May executed wills dated May 24, 1983, to effect this intent in the wills' article sixth, attached to the petition, which alleged that both Kieram and May orally acknowledged to Caldecott that the 1983 wills provided for distribution in accordance with the contract agreement. Caldecott's declaration concerning events occurring on May 24, 1983, accompanied the petition.

In 1985, after Kieram's death, May executed a will and trust of which respondent John McSweeney became the trustee. The 1985 will distributes the residue of May's estate to the trustee. When Kieram died, his heirs at law consisted of nine nieces and nephews, of whom petitioner is one. The 1985 will distributes 90 percent of the estate to May's heirs, and 10 percent of the estate to six of Kieram's nine nieces and nephews. The 1985 trust does not name petitioner as a beneficiary.

The petition sought to impose a constructive trust on the trust estate and determine that the trustee held half the trust estate as constructive trustee for Kieram's heirs, and requested the court instruct the trustee to convey trust assets equal in value to half the trust estate to them. The petition also sought a determination that Kieram's heirs could join in the petition without forfeiting any of their interest in the trust or in May's estate under any in terrorem provision of the 1985 will. On May 11, 1988, Margaret Mullins Pileggi, another niece and also a beneficiary named in the 1985 trust, joined the petition "only to the extent that the petition [asked] for a determination that a member of a class of beneficiaries named in the Trust . . . may join in

the Petition . . . in its entirety without violating the *in terrorem* provisions of the Trust and the 1985 Will. . . . At this time the undersigned [Pileggi] does not hereby join in said Petition for Determination of Entitlement to Trust Property and for Imposition of Constructive Trust." (This opinion will refer to a single petitioner.)

After a hearing on May 12, 1988, Judge Richard C. Hubbell issued an order dismissing the petition for lack of jurisdiction, filed May 27, 1988. The order stated that the court had no jurisdiction over an action for imposition of a constructive trust, pursuant to the provisions of Probate Code sections 82, subdivision (b)(1) and 15003, subdivision (a). It further found that since the court had no jurisdiction over the principal action to impose a constructive trust based upon an alleged oral agreement, it had no jurisdiction to determine whether bringing that action would violate the in terrorem clause of the written trust agreement.

On July 5, 1988, the trial court issued an order denying petitioner's motion for reconsideration because it was not based on an alleged different state of facts as required by Code of Civil Procedure section 1008, and because the court found the motion should be denied based upon lack of jurisdiction. The respondent filed a notice of entry of order on July 7, 1988. Petitioner filed a notice of appeal on July 11, 1988.

## ISSUES

Petitioner on appeal claims that: 1. The 1986 enactment of division 9 of the Trust Law broadened and clarified probate court jurisdiction, and that the probate court had exclusive and concurrent jurisdiction over the May Barrett Mullins trust;

2. The probate court did not lose jurisdiction over the trust simply because petitioner asked it to exercise its equitable powers;

3. The probate court had jurisdiction to determine whether May entered into a valid will contract; and that

4. Petitioner's alleged failure to plead different facts is not a proper basis for denying a motion for reconsideration.

## DISCUSSION

Petitioner's claim on appeal, though variously phrased, essentially concerns the correctness of the trial court's assertion that it lacked jurisdiction because of Probate Code sections 82, subdivision (b)(1) and 15003,

subdivision (a). Petitioner claims that Probate Code section 17200 et seq. gives the probate court jurisdiction. These sections are part of division 9, "Trust Law," of the Probate Code revisions added by Statutes 1986, chapter 820, section 40, operative July 1, 1987. We hold that under the facts of this case, division 9 does not give the probate court jurisdiction over petitioner's claim, and affirm.

■ An action to enforce an oral agreement to make a particular testamentary disposition is generally enforceable. (*Redke* v. *Silvertrust* (1971) 6 Cal.3d 94, 100 [98 Cal.Rptr. 293, 490 P.2d 805].) The appropriate action to enforce such a contract is the imposition of a constructive trust. (*Estate of Watson* (1986) 177 Cal.App.3d 569, 573 [223 Cal.Rptr. 14].) ■ The question in the case at bench is whether the probate court has jurisdiction to hear such an action, or whether that action must be brought as a civil action, separate from probate proceedings, in superior court.

Traditionally, under the probate court's exclusive jurisdiction, wholly derived from statute, probate of a will barred suits in equity. (*Stevens* v. *Torregano* (1961) 192 Cal.App.2d 105, 127 [13 Cal.Rptr. 604].) Although the probate court had the power to apply equitable and legal principles in performing its functions, it could do so only insofar as a statute authorized its jurisdiction in a circumscribed class of proceedings. (*Conservatorship of Coffey* (1986) 186 Cal.App.3d 1431 [231 Cal.Rptr. 421]; *Neubrand* v. *Superior Court* (1970) 9 Cal.App.3d 311 [88 Cal.Rptr. 586].)

Many decades ago, the California Supreme Court established the rule that a person harmed by the violation of a contract to make testamentary provision for another must pursue the remedy in a court of law or equity, not a probate court. (*Estate of Rolls* (1924) 193 Cal. 594, 599 [226 P. 608]; *Estate of Berry* (1925) 195 Cal. 354, 361 [233 P. 330].) As *Estate of Dabney* (1951) 37 Cal.2d 672 [234 P.2d 962] explained, a claimant of property or contract rights adverse to the estate cannot have that claim resolved in a probate court. Neither does the probate court's order of distribution of estate properties bind someone claiming adversely to the estate. (*Id.* at pp. 676-677.) This latter rule also applies to claims based on a decedent's contract to make a particular testamentary disposition. (*Estate of Miller* (1963) 212 Cal.App.2d 284, 295 [27 Cal.Rptr. 909].)

*Ludwicki* v. *Guerin* (1961) 57 Cal.2d 127, 131-132 [17 Cal.Rptr. 823, 367 P.2d 415], and *Thompson* v. *Beskeen* (1963) 223 Cal.App.2d 292, 296 [35 Cal.Rptr. 676], explain the theory of the action to impose a constructive trust arising out of contract rights. To prevent the estate and legatees from gaining assets by the testator's wrongful act, equitable remedies may establish an involuntary trust for the benefit of the person who would otherwise

have the assets. When a will creates an express trust, the decedent's death vests legal title in the trustee and equitable title in the beneficiary. "The same principle should be applied to a constructive trust based on conduct of the decedent, including failure to perform a promise to make a will. . . . [An] action to impose the [constructive] trust does not interfere with the proceedings in probate. It does not set forth a claim against the estate, or against the executor, or against his right to possession for the purposes of administration. [¶] The action is in effect a suit between a claimant under the contract and claimants under the will or by intestacy as to who is entitled to all or part of the estate, and it does not purport to interfere with the administration by the executor, who, with respect to the proceeding, is in the position of a stakeholder." (*Ludwicki* v. *Guerin, supra,* 57 Cal.2d 127, 132.) The existence of a probate decree does not bar an action for equitable relief based on the breach of contract to make a particular testamentary disposition of property. (*Brown* v. *Superior Court* (1949) 34 Cal.2d 559, 565 [212 P.2d 878]; *Goldstein* v. *Hoffman* (1963) 213 Cal.App.2d 803, 813 [29 Cal.Rptr. 334].)

*Estate of Baglione* (1966) 65 Cal.2d 192 [53 Cal.Rptr. 139, 417 P.2d 683] expanded the probate court's jurisdiction to hear and determine third party claims adverse to the estate, but only in limited circumstances. While recognizing the general rule that the probate courts' jurisdiction to administer decedents' estates does not encompass the power to pass on assertions of title to property made by parties not in privity with the estate and claiming adversely to it, the *Baglione* opinion mentioned several exceptions to this rule.

One exception occurs where a controversy has a sufficient connection with a pending probate proceeding to be properly litigated therein. That connection may arise out of the relationship between the parties, and may thus give the probate court the power to determine whether an assignment or other transfer of the interest of an heir, legatee, or devisee to a third party is valid and order distribution accordingly. (65 Cal.2d at p. 196.) And when a party invokes the probate court's jurisdiction by asserting a substantive right in a particular piece of property or in certain assets as an heir, legatee, or devisee, the party may also obtain a judgment in probate court determining any additional claims asserted against those in privity with the estate in the same property. "The rationale for this exception is the conservation of time, energy, and money of all concerned. To deny a superior court sitting in probate the power to determine the whole controversy between the parties before it is pointless." (*Id.* at pp. 196-197.)

*Baglione* pointed out that "a superior court sitting in probate that has jurisdiction over one aspect of claim to certain property can determine all

aspects of the claim. A claimant is not required to sever and litigate a multi-faceted claim in separate proceedings once all the necessary parties are before the court." (65 Cal.2d at p. 197.)

This final requirement remains crucial to justifying why *Baglione* expanded probate court jurisdiction. In *Baglione,* the third party claiming adversely to the devisees of the will was the testator's widow, and had a community property interest in the property subject to probate. Because she was therefore properly before the probate court, *Baglione* held that the probate court should have resolved the entire controversy and determined her rights to the property under the alleged oral agreement with the decedent. (65 Cal.2d at p. 197.)

In *Estate of Plum* (1967) 255 Cal.App.2d 357 [63 Cal.Rptr. 241], for example, the probate court had jurisdiction to determine the community property claim of a party already in privity with the estate and who participated in the probate proceedings. But where a husband never invoked the court's probate jurisdiction and did not appear or participate in probate proceedings, the probate court lacked jurisdiction to adjudicate his adverse claim of joint tenancy. (*Estate of Hagberg* (1969) 276 Cal.App.2d 622, 625-627 [81 Cal.Rptr. 107].)

On facts resembling those in *Baglione,* in *Estate of Fincher* (1981) 119 Cal.App.3d 343, 348-350 [174 Cal.Rptr. 18], the claimant was already before the court as an heir within the meaning of Probate Code section 1080. That participation gave her the right to assert her claim to community property rights and gave the probate court jurisdiction to determine her contract claim. *Copley* v. *Copley,* (1978) 80 Cal.App.3d 97, 108 [145 Cal.Rptr. 437], emphasized the precondition that *Baglione* required all the parties to be before the court. Absent the voluntary submission of the issue or the parties necessary to determine completely the issue before it, the probate court had only its statutory power and incidental legal and equitable powers necessary to exercise it.

The only case our research has disclosed construing the jurisdictional provisions of the 1986 revisions to the Probate Code in division 9 is *Stewart* v. *Towse* (1988) 203 Cal.App.3d 425, 430 [249 Cal.Rptr. 622]. *Stewart* found that a probate court had the power to grant equitable relief to the trustee and beneficiary of an irrevocable trust. Probate Code section 17001 gave the probate court all the powers of the superior court; Probate Code section 17004 gave the court jurisdiction in proceedings under division 9 on any basis permitted by Code of Civil Procedure section 410.10; and Probate Code section 17000 granted to the superior court having jurisdiction over the trust exclusive jurisdiction of proceedings directing the internal affairs of trusts.

As *Rolls, Berry, Dabney, Ludwicki,* and *Thompson,* make clear, however, an action for a constructive trust does not involve the internal affairs of a trust. Internal trust affairs, for example, include modification of the terms of the trust, changes in a designated successor trustee, other deviation from trust provisions, authority over the trustee's acts, or the administration of the trust's financial arrangements. (*Stewart* v. *Towse, supra,* 203 Cal.App.3d 425, 429-430; *Estate of Macmillan* (1954) 43 Cal.2d 437, 446-447 [274 P.2d 662]). The action in the case at bench does not affect these or similar "internal affairs" of the estate, and thus it cannot rely upon division 9 of the Probate Code for a grant of jurisdiction to be heard in probate court.

Probate Code section 15003, subdivision (a) confirms this conclusion, stating that "Nothing in this division affects the law relating to constructive or resulting trusts." Elsewhere in the Probate Code, section 82, subdivision (b)(1) states that a "trust" excludes constructive trusts (other than a judicially created trust administered like an express trust, an exception not applicable to the case at bench). It must be presumed that section 15003, subdivision (a) includes the law relating to jurisdiction within its scope, and that this section and division 9 therefore leave existing law concerning the lack of probate court jurisdiction to hear actions to impose a constructive trust unchanged.

This is especially true when we remember that another part of division 9, Probate Code section 17001, expressly gives to the probate court "all the powers of the superior court," but conditions this expansion of probate jurisdiction, once again, to "proceedings concerning the internal affairs of trusts." This statutory jurisdictional expansion for these limited and carefully defined proceedings establishes that the Legislature consciously decided not to give the probate court a similarly expanded jurisdiction over constructive trusts.

Petitioner Mary Hawley is not named in the 1985 trust agreement between John McSweeney, trustee, and May Barrett Mullins, settlor. The petition, in fact, does not challenge the 1985 will and trust; instead it expressly relies upon the 1983 will only as evidence of a contract. The cause of action is clearly one to impose a constructive trust. Just as clearly, it makes its contractual claim adversely to the beneficiaries of the trust, and does not seek to affect its internal affairs. We therefore find the probate court correctly ruled in finding it lacked jurisdiction to hear the petition, and affirm its ruling dismissing the petition.

## DISPOSITION

We affirm the probate court's ruling dismissing the petition.

Devich, J., and Ortega, J., concurred.

The petition of appellant Hawley for review by the Supreme Court was denied March, 15, 1989.