Filed 7/29/16  Bradshaw v. Superior Court CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| DREXEL BRADSHAW, as Trustee, etc.,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>SUPERIOR COURT OF CITY AND COUNTY OF SAN FRANCISCO,<br><br>     Defendant and Respondent;<br><br>ORA GOSEY,<br><br>     Real Party In Interest. | A146562<br><br>(San Francisco County<br>Super. Ct. No. PTR-14-297499) |

In this case, appellant Drexel Bradshaw appeals from the July 30, 2015 order of the probate court directing the continued supervision by the court over the Gosey Revocable Living Trust (Trust).  Appellant asserts this order is directly contrary to a December 5, 2013 order of the same court by another judge, which stated that the Trust would no longer be under court supervision once appellant, as trustee for the Trust, filed an accounting.  We agree with appellant's contentions and reverse because, as the accounting has now been filed, there is no longer any basis for court supervision of the Trust.

**STATEMENT OF FACTS**

In this appeal we are concerned with the operation of the Trust, created in 2007 by Ora Gosey. Gosey was the settlor of the Trust. The Trust is intended to provide for her care as long as she is living. The Trust also includes language stating the trustee is relieved of the obligation to provide an accounting to any court and is not required to qualify in any court: "No bond shall be required of the Trustee or any Successor Trustee. The Trustee and any Successor Trustee shall not be required to qualify in any court and are relieved of the filing of any document or accounting in any court." The current successor trustee, and appellant here, is Bradshaw & Associates, P.C.

A conservatorship was begun in August 2013 regarding Gosey in San Francisco Superior Court, case No. PCN-13-297063 (Conservatorship Action). In the Conservatorship Action, a Petition for Substituted Judgment to Fund Existing Revocable Trust Created by Conservatee and for Termination of Conservatorship Estate was filed. During this period, Judge Sing of the San Francisco Superior Court presided over the matter. She entered an order granting the petition on December 4, 2013 (December 2013 Order). This order directed appellant, who was both the conservator for Gosey and the trustee of the estate, to transfer assets into the trust. The order also directed appellant to file a trust accounting. The order states the trial court would "retain jurisdiction of the Trust *until the filing and approval of the accounting for the period December 2, 2013 to November 30, 2014*." (Italics added.) Finally, the December 2013 Order terminated the conservatorship of Gosey's estate upon the transfer of all conservatorship assets to the Trust and the filing of necessary receipts.

Appellant subsequently initiated a trust action in San Francisco Superior Court, case No. PTR-14-297499 (Trust Action) in February 2014. This action was triggered by filing a Petition for Order Authorizing Successor Trustee to Sign Reverse Mortgage For the Benefit of the Conservatee and Her Estate and to Increase Trustee's Bond. Filed with this petition was a copy of the December 2013 Order referenced above.

2

On February 3, 2015, appellant filed the First and Final Report and Account of Trustee in the Trust Action. In the report, he asked the probate court to follow the December 2013 Order and cease jurisdiction over the Trust. Appellant subsequently filed a supplement to the report on May 21, 2015. A second supplemental report was filed on June 2, 2015.

On June 12, 2015, successor trustees Thomas Bush and Willie Cole each declined trustee designation and accepted the trusteeship by appellant.

On June 15, 2015, a hearing was held in the probate court regarding the administration of the Trust. Counsel for appellant advised the court that the Trust had not initially been under court supervision. The Conservatorship Action was initiated to fund the Trust, and it was now appropriate per the terms of the Trust to revert back to not being under court supervision. Counsel also pointed out that the December 2013 Order specifically provided that the court would relinquish jurisdiction after the first accounting was filed. The hearing was before Judge Alvarado, who indicated he was not inclined to remove the trust from court supervision because of the conservatorship.

Appellant filed a third supplement to the First and Final Report on July 10, 2015. In the supplement, he addressed the court's concerns regarding whether the trust should remain under the continued supervision of the court in light of the December 2013 Order. He argued the December 2013 Order was now final, and claimed continued supervision by the court would be inconsistent with the settlor's intent and would force her to pay unnecessary expenses, emphasizing that the Trust beneficiaries did not object to the termination of court supervision.[1]

On July 30, 2015, the probate court, through Judge Cheng, issued an Order Settling and Approving First Report and Account of Trustee; Authorizing Deferral of Trustee's Fees and Payment of Attorneys' Fees and Reimbursement of Costs (July 2015

_____

[1] No respondent has appeared in this action in support of the July 2015 Order.

3

Order).  However, the July 2015 Order did not relinquish court supervision of the Trust. Judge Cheng deleted the following language from the proposed order submitted by appellant:  "The [Trust] is removed from continuing court supervision and trustee's bond is exonerated."  The court also required appellant to file another accounting by August 17, 2016.

On September 28, 2015, appellant filed a timely notice of appeal from the July 2015 Order.

## DISCUSSION

### I.    Standard of Review

This appeal challenges an issue of law.  Hence, the matter is subject to our de novo review.  (*Conservatorship of Kane* (2006) 137 Cal.App.4th 400, 405.)

### II.    The Probate Court Erred When It Disregarded the December 2013 Order.

At the time the July 2015 Order was issued, the December 2013 Order was final, since no appeal had been taken by any party.  It is well established that it is error for a court to negate a prior final order by the same court dealing with the same subject matter: "For one superior court judge, no matter how well intended, even if correct as a matter of law, to nullify a duly made, erroneous ruling of another superior court judge places the second judge in the role of a one-judge appellate court."  (*In re Alberto* (2002) 102 Cal.App.4th 421, 427.)  In *Sheldon v. Superior Court* (1941) 42 Cal.App.2d 406, 408, an order by one probate judge nullifying a prior ex parte order of another probate judge appointing an administrator of an estate was overturned because the record did not reflect the original order was either inadvertent, mistaken, or created by fraud.  In the instant case, there is no showing of any of these exceptions to finality.  Indeed, the ruling by Judge Cheng does not explain the reasoning for his decision.

A review of this record establishes the conservatorship was terminated by the December 2013 Order.  No inadvertence, mistake or fraud are reflected in this record which could be attributed to Judge Sing's December 2013 Order.  Appellant and his

4

counsel objected to continued supervision by the probate court. The beneficiaries of the Trust also agreed to ending court jurisdiction. The terms of the Trust cited previously permit what is sought by the appellant. No appeal was taken by any party of the December 2013 Order, and no party has filed any opposition in the instant appeal.

As noted above, the record does not reflect any reason for Judge Cheng to have voided the December 2013 Order. For one trial judge to reverse or modify a ruling made by another judge of the same court, the record should reflect highly persuasive reasons for doing so; even a simple disagreement is insufficient. (*People v. Riva* (2003) 112 Cal.App.4th 981, 992.) Possible reasons for correcting a prior order can include evidence the original trial judge stated she would reconsider her ruling later in time (*ibid.*), evidence a party affected by the original order sought appellate or writ relief when the order was issued (*People v. Superior Court (Tunch)* (1978) 80 Cal.App.3d 665, 668), or that circumstances have changed since the original order was made and the record reflects such (*In re Kowalski* (1971) 21 Cal.App.3d 67, 70). None of these circumstances are apparent here.

## III.    The Probate Court Failed to Follow Code of Civil Procedure Section 1008.

Occasionally, a trial court may conclude a change in the applicable law has taken place since issuing an order, and, on its own motion, seek reconsideration of the ruling. This process is reflected in Code of Civil Procedure section 1008 (section 1008). Here, the Conservatorship Action and the Trust Action were related matters. After the December 2013 Order was entered, the court could have moved to consider setting aside or modifying the order under section 1008. (*Morite of California v. Superior Court* (1993) 19 Cal.App.4th 485, 492–493 (*Morite*).)

We are not aware of any change in legal rules affecting the December 2013 Order. However, if Judge Cheng believed there were any, he was required to follow the procedure set forth in section 1008, subdivision (c). Under that statute, if a trial court

5

seeks reconsideration of a prior ruling on its own motion, it must advise the parties of its intention and solicit written response, along with holding a hearing on the record. (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1108; *Paramount Petroleum Corp. v. Superior Court* (2014) 227 Cal.App.4th 226, 238.) In this case, appellant asked the probate court to follow the December 2013 Order and terminate court supervision of the Trust. Instead, Judge Cheng "reconsidered" what Judge Sing had determined and opted to continue jurisdiction—all without any request for briefing or oral argument on this issue.

Appellant's brief does indicate the local rules of the San Francisco Superior Court were revised as of January 1, *2016,* to disfavor removal of trusts from the supervision of the Superior Court. (Local Rule 14.77(A)(7)(f).) However when the July 2015 Order was made, this change was not in effect. (See former Local Rule 14.86(A)(7).) Section 1008, subdivision (f) provides: "For the purposes of this section, an alleged new or different law shall not include a later enacted statute without a retroactive application." The January 2016 revision to the Local Rule cited above contains no implication that it is intended to be retroactive. Regardless, the failure to comply with the procedures of section 1008 deprived the second judge (Judge Cheng) of jurisdiction to reconsider. (*Morite, supra*, 19 Cal.App.4th at pp. 490–491.)

## IV. The Doctrine of Collateral Estoppel.

Collateral estoppel principles prevent revisiting an issue fully litigated and determined. The elements of collateral estoppel are (1) a claim or issue raised in the current action is identical to a claim or issue fully litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party in the prior action. (*Boeken v. Philip Morris USA Inc.* (2010) 48 Cal.4th 788, 797.)

Whether to continue court supervision over the Trust was the identical issue in both the December 2013 and July 2015 Orders. The December 2013 Order was a conservatorship matter that permitted the transfer of assets to the Trust. This same

6

issue—judicial oversight of the Trust—was decided by the July 2015 Order. Without explanation, however, the July 2015 Order upset the December 2013 Order by continuing judicial supervision and calling for further accounting by the trustee.

The December 2013 Order was essentially final, except for the filing of the accounting. The order left no issues for future consideration except compliance—submitting an accounting of the Trust and receiving the approval from the court. " '[W]here no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory.' " (*Olson v. Cory* (1983) 35 Cal.3d 390, 399.) Here there was nothing left for the court to do except to consider the accounting, which was approved in the July 2015 Order.

The December 2013 Order was also final for purposes of collateral estoppel because it could have been appealed under Probate Code section 1301, subdivision (d),[2] but was not. Here the conservator filed a petition for an order permitting him to transfer all conservatorship assets to the Trust for the benefit of the conservatee. This was approved by the court and the December 2013 Order directed the conservator to transfer all assets of the conservatee to the Trust. Because the order was for the benefit of the conservatee, it falls directly within Probate Code section 1301, subdivision (d) as an appealable order. No appeal was taken and the December 2013 Order became final.

There also was a community of interest or privity between the conservatorship of the Gosey estate and the Trust Action such that the former would be expected to be bound by a related prior suit or order. (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875.) Both the conservatorship and the Trust were established for the

---

[2] Probate Code section 1301, subdivision (d) provides that the grant of "a petition under Section 2423 or under Article 10 (commencing with Section 2580)" is appealable.

7

same purpose—the care of Gosey. Furthermore, the Trust would expect to be bound by the December 2013 Order because the Trust was expressly referenced in that order: "The court will retain jurisdiction of the [Trust] until the filing and approval of the accounting . . . ." Also, the Trust relied on the December 2013 Order in the Trust Action, referencing the prior order in the various accountings appellant filed during 2015 cited above.

**V.      The July Order by Judge Cheng Fails to Acknowledge the Settlor's Intent.**

It is a cardinal rule of trust administration that courts assess the intent of the maker of the trust and effect that intent whenever possible. (*Estate of Parrette* (1985) 165 Cal.App.3d 157, 161; *Estate of Gump* (1940) 16 Cal.2d 535, 548.) We determine this intent often by simply reading the language of the trust and observing the expressed intent reflected. Here, the Trust was specific in its effort to limit court supervision: "No bond shall be required of the Trustee or any Successor Trustee. The Trustee and any Successor Trustee shall not be required to qualify in any court and are relieved of the filing of any document and accounting in any court."[3] Yet, Judge Cheng's July 2015 Order directed continued supervision by the court without any effort to make his ruling compatible with the settlor's intentions—or articulate why he had to digress from that intention to make the decision he made. The cost to the Trust in fees and management, draining its resources for continued judicial supervision, was onerous. This is an especially questionable position when the trustee appellant, along with all the beneficiaries, agreed with the earlier decision to end judicial supervision.

### CONCLUSION

We conclude the July 2015 Order by the probate court requiring further supervision of the Trust is erroneous. The order essentially vitiated the December 2013

_____

[3] This language conforms to Probate Code section 17209, which provides: "The administration of trusts is intended to proceed expeditiously and free of judicial intervention, subject to the jurisdiction of the court."

Order, which was final and unchallenged by any party. Any sua sponte alteration by Judge Cheng was also improper since he failed to comply with the procedures of section 1008. Principles of collateral estoppel also applied to the December 2013 Order, since the elements of the doctrine were established as a matter of law. Finally, we conclude the July 2015 Order disregarded the intentions of Gosey without any articulated reason.

## DISPOSITION

The order dated July 30, 2015, is reversed as to the continued supervision by the court over the Gosey Revocable Living Trust. In all other respects, the order dated July 30, 2015 is affirmed.

_____
DONDERO, J.

We concur:


_____
HUMES, P. J.


_____
MARGULIES, J.

9